R. Michael CROWSON d/b/a Marineco; R. Michael Crowson d/b/a Pacific Barge Leasing Co.; R. Michael Crowson d/b/a Marine Eagle Flat and Container, Petitioner,

v.

SEALASKA CORPORATION; Alaska Aggregate Corporation d/b/a Pacific Western Lines, Inc.; and Alaska Brick Company, Inc., Respondents.

SEATTLE–FIRST NATIONAL BANK, a national banking association, Petitioner,

v.

SEALASKA CORPORATION; Alaska Aggregate Corporation d/b/a Pacific Western Lines, Inc.; and Alaska Brick Company, Inc., Respondents.

Nos. 5–407, 5–422.

Supreme Court of Alaska.

Aug. 2, 1985.
Rehearing Denied Sept. 30, 1985.

Jon R. Zulauf, Edward M. Bensussen, Franco, Asia, Bensussen, Coe & Finegold, Seattle, Wash., Dan E. Dennis, Dennis,

Kibby & Moss, Anchorage, for petitioner, Crowson.

David T. Walker, Juneau, Evan L. Schwab, Craig Miller, Seattle, Wash., for petitioner, Seattle-First National Bank.

Bruce E. Gagnon, Patrick B. Gilmore, Atkinson, Conway, Bell & Gagnon, Anchorage, for respondents.

Before RABINOWITZ, C.J., and BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This consolidated petition for review arises out of a suit by the respondent, Sealaska Corporation, to rescind six barge charters and one equipment lease which were allegedly procured through extensive fraud and bribery. Petitioners and defendants below, R. Michael Crowson and Seattle-First National Bank (Seattle-First), the lessor and assignee of the lessor's interest in the contracts, respectively, contend this action must be dismissed on forum non conveniens grounds and because forum selection clauses in the contracts do not permit Sealaska to bring this type of suit in Alaska.

### I

Sealaska is an Alaskan corporation with its principal place of business in Juneau, Alaska. Sealaska is the sole owner of Alaska Brick Company, which in turn is the sole owner of Pacific Western Lines. Pacific Western is the entity that chartered the six barges and leased the equipment (1,175 pallets and 1,100 containers) that is at issue. Sealaska guaranteed Pacific Western's performance under the contracts.

Crowson, an attorney and businessman from Seattle, borrowed approximately 20 million dollars from Seattle-First so that he could purchase the barges and equipment that he leased to Pacific Western. In exchange for the loans, Crowson granted preferred ship mortgages on the barges to Seattle-First and assigned to the bank his

interest in the charters, lease and guarantees. As additional security, Seattle-First obtained from Pacific Western consents to the charter and lease assignments in which Pacific Western agreed to pay Seattle-First all amounts payable under the contracts. Pacific Western also agreed to waive any defenses to payment that it may have against anyone other than the bank. Three consents were executed—the first purports to cover two of the barge charters, the second purports to cover the other four charters, and the third concerns the equipment lease.

The charters and equipment lease contract were entered into by Crowson and Pacific Western in 1981–1982. Thomas Marshall, the president of Alaska Brick Company and Pacific Western Lines, signed the agreements for Pacific Western after obtaining permission from the management and board of Sealaska. Shortly thereafter, Sealaska personnel uncovered evidence indicating that the contract prices were unreasonably high and that Crowson paid bribes to Marshall and Kenneth R. Fry, the general manager of Pacific Western, in order to obtain the agreements. Sealaska estimates that the illegal payments amounted to over $1.4 million. Fry has admitted his own involvement and given a sworn statement describing in detail the mechanics of the fraud and implicating both Crowson and Marshall. Cancelled checks and other records documenting the bribe payments have been, uncovered. Crowson denies any wrongdoing and has invoked the fifth amendment privilege with respect to all questions concerning the contracts. Marshall has apparently fled the country.

Sealaska discontinued payments under the contracts early in 1983, and Crowson soon after defaulted on its loan payments to Seattle-First. This action was filed on March 4, 1983. Sealaska is seeking judgment declaring void each of the contracts, guarantees, and consents and seeks the

recovery of damages and other relief. The complaint also alleged violations of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, and the Robinson-Patman Antitrust Act, 15 U.S.C. § 15, claims over which the federal courts have exclusive jurisdiction. Defendants removed the case to the United States District Court for the District of Alaska, under 28 U.S.C. § 1441. However, because removal jurisdiction is derivative and the state court lacked subject matter jurisdiction over the federal claims, the United States District Court remanded the case back to the superior court.[1] The federal claims were necessarily withdrawn.

Thereafter, Crowson and Seattle-First moved to have the case dismissed on two alternative theories; first, that the doctrine of forum non conveniens is applicable and bars the action, and second, that various forum selection clauses in the contracts are mandatory and should be enforced. The superior court decided to retain jurisdiction, concluding that defendants' inconvenience in litigating the case in Alaska did not so outweigh plaintiffs' right to choose their forum that the doctrine of forum non conveniens should be invoked. With respect to the forum selection clauses, the superior court held that they are not applicable because the action to rescind did not arise out of the contracts. The superior court also concluded, alternatively, that even if the clauses were applicable, they are not enforceable here where plaintiffs have shown a "triable issue of fact" as to their claim of fraud in the procurement of the contracts. The court further noted that it would be against public policy to enforce the clauses and "in essence reward a commercial briber."

## II

Under the doctrine of forum non conveniens, a court should decline to exercise its jurisdiction over a case, thereby compelling the plaintiff to sue elsewhere,

---

**1.** *See Lambert Run Coal Co. v. Baltimore & O.R.R. Co.,* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1921).

only if the selected forum is a seriously inconvenient place to conduct the litigation.[2] In determining the applicability of the rule, the court must consider the public interest as well as the private interests of the litigants. The Supreme Court of California has delineated some of the factors which a court should consider when facing a forum non conveniens claim:

> [T]he ease of access of proof, the availability and cost of obtaining witnesses, the possibility of harassment of the defendant in litigating in an inconvenient forum, the enforceability of the judgment, the burden on the community in litigating matters not of local concern, and the desirability of litigating local matters in local courts.

*Goodwine v. Superior Court,* 63 Cal.2d 481, 47 Cal.Rptr. 201, 204, 407 P.2d 1, 4 (1965). Unless the balance of these factors is strongly in favor of defendants, plaintiff's choice of forum should rarely be disturbed. *Id.* Where, as here, plaintiff is a bona fide resident of the forum state, the doctrine of forum non conveniens has only an extremely limited application. *Thomson v. Continental Ins. Co.,* 66 Cal.2d 738, 59 Cal.Rptr. 101, 105, 427 P.2d 765, 768 (Cal.1967).[3]

■ Crowson[4] argues that several critical witnesses are not subject to compulsory process here and may decide not to testify in Alaska. Although this may be true, there is nothing in the record before us to support this contention. Given the evidence, it would be as equally reasonable for us to conclude that certain important witnesses that can be made to testify in Alaska are not subject to process in Washington, the state in which petitioners desire to have this action litigated. We note that a party claiming that the convenience of witnesses would be promoted by a venue change within the state must submit an affidavit stating the names of the witnesses and the reasons why the attendance of each would be inconvenient, and must show that their proposed testimony is admissible, relevant and material to an issue in the case. AS 22.10.040.[5] A similar showing is essential where, as here, the moving party seeks to have the case removed from the jurisdiction on the grounds that some witnesses may otherwise choose not to testify.

■ Crowson further contends that it would be wasteful to continue the suit here since two related actions, which cannot be tried in the state courts, are currently pending before the United States District Court for the Western District of Washington. Only if this case is dismissed, Crowson argues, will it be possible to try the entire matter in one forum. In our view, neither of the pending federal actions warrants the dismissal of this case.

On March 17, 1983, Seattle-First filed in the Washington federal court an in rem admiralty action against Crowson to foreclose upon the six barges. Joined with that suit were certain in personam state law claims against Crowson and Sealaska to enforce the charters and equipment lease. On August 5, 1983, the Federal District Court in Washington bifurcated the action and stayed the in personam claims pending decision by the Federal District Court in Alaska in this action after it was removed.

---

**2.** *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

**3.** Some states hold as a general rule that jurisdiction must be retained if one of the litigants is a resident of the forum state. *See, e.g., Cressey v. Erie R. Co.,* 278 Mass. 284, 180 N.E. 160, 163 (1932). The approach taken in most federal courts is to consider a litigant's residence in the forum state as highly significant, tending to weight the balance of convenience in his favor, but not conclusive. *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 525, 67 S.Ct. 828, 832, 91 L.Ed. 1067, 1074 (1947). The more relaxed federal standard seems justified because the federal court system is nationwide, and thus, "the sovereign's interest in keeping the doors of its courts open to its citizens" is not impaired. *See Thomson v. Continental Ins. Co.,* 66 Cal.2d 738, 59 Cal.Rptr. 101, 106 n. 2, 427 P.2d 765, 769 n. 2 (1967).

**4.** Although both Crowson and Seattle-First contended before the superior court that this doctrine is applicable here, only Crowson makes this argument on appeal.

**5.** *See Coughlan v. Coughlan,* 423 P.2d 1010 (Alaska 1967).

The in rem action was allowed to proceed, since all parties agreed it should take place in Washington, and the foreclosures have been completed. The stay on the in personam claims was removed after the Federal District Court in Alaska's decision to remand, and that part of the action is apparently proceeding. We think it is unfair, however, to dismiss this case simply because a later filed suit concerning the same state law issues is pending in federal court. Once again, there is no basis in the record for concluding that a suit in Alaska will be significantly more burdensome for the parties than a suit in the federal district court in Seattle.

The other federal suit, filed by Seattle-First in September, 1983, alleges violations by Sealaska of RICO. 18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1964(c) provides that any person injured by reason of a violation of § 1962 may sue and "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." We think that, as in the foreclosure action, the existence of this federal suit does not mandate that this action be terminated. Even if Seattle-First does have a valid claim under RICO,[6] it may only recover if it is unsuccessful in the instant case and thus actually damaged by the alleged racketeering activity.

Sealaska and its subsidiaries are citizens of the state, claiming they were defrauded on a massive scale by both Alaskan residents and nonresidents. Some of the al-

leged fraudulent activity was conducted in Alaska. Thus, the state's interest in resolving this dispute is hardly insignificant.[7] Given this, and the fact that the record contains no basis for concluding that anyone will suffer unduly if Alaska retains jurisdiction, we conclude that the superior court correctly decided that the doctrine of forum non conveniens is not a bar to this action.

### III

The charters, equipment lease, and consents all contain somewhat different provisions concerning the jurisdictions in which lawsuits involving the contracts may be properly brought. The six charters all provide that:

> Any suit, action or proceeding brought by either party to enforce any term or provision of this Agreement shall be commenced in the Superior or District Court of Washington for King County or the United States District Court for the Western District of Washington, at Seattle, Washington.

The equipment lease provides that:

> Any suit between the parties arising out of this lease shall be brought only in King County Superior Court, in and for the state of Washington.

The three consents all provide:

> [Pacific Western agrees] that any legal action or proceedings in respect of this Consent may be brought in the courts located in [Washington] or any other competent court as [Seattle-First] may elect; and by execution of this Consent, [Pacific Western] accepts for itself and in respect of its property generally and un-

---

**6.** Although civil suits under 18 U.S.C. § 1962 can be brought against a corporation, i.e., the "person" and "enterprise" can be the same entity, *Bernstein v. IDT Corp.*, 582 F.Supp. 1079 (D.Del.1984), we could not find any case allowing a recovery under RICO where the defendant corporation was the intended victim of the crime. *In Parnes v. Heinold Commodities*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982) the court, faced with such a question, concluded that "[i]t would be an obvious distortion [of section 1964(c)] to

permit suit against the 'enterprise' ... that may itself be a victim of the racketeering activity." We note this only to demonstrate the possibility that Seattle-First is pursuing this cause of action solely for jurisdictional purposes.

**7.** We note that a federal grand jury has been convened in Anchorage to investigate this matter.

conditionally the jurisdiction of the aforesaid courts;

The superior court concluded that the forum selection clauses do not cover the instant case, and, even if they did, they are not enforceable here where Sealaska has shown the existence of a triable issue of fact as to its claim of fraud in the procurement of the contracts. Petitioners contend that the language of these clauses does encompass a suit for rescission, and is enforceable absent substantial evidence that inclusion of these specific clauses was the result of fraud. In addition, Seattle-First contends that even if Sealaska need only show fraud in the procurement of the agreements generally, the forum selection clauses in the consents are enforceable since there is no evidence that Seattle-First was involved in the fraud.

### A. Do The Various Forum Selection Clauses Encompass This Lawsuit?

■ In our view, the language in the barge charters does not cover this action. Sealaska is not trying "to enforce any term or provision" in the charters; it is seeking to rescind the agreements in their entirety. Petitioners argue that Sealaska's claims are "intrinsically related to the terms and provisions of the agreement." Perhaps so, but this is not what the contract states. It is not the task of the courts to rewrite the language to conform to the wishes of Crowson and Seattle-First.

We do not think that our reading of the clause is too literal. If contracting parties do not want a forum selection clause to apply to lawsuits for rescission on the grounds of fraud, they would likely use language similar to that used in the charters. If the obvious intent of the parties was to have all possible suits arising out of the agreements litigated in Washington, they could have easily so provided—they certainly knew how, as the forum selection clause in the equipment lease, discussed below, clearly illustrates.

■ The equipment lease contains broader language, covering "any suit arising out of the lease." We hold that a suit to rescind a lease, based on fraud in the inducement, "arises" out of the lease, even if the complaint alleges only claims sounding in tort. *See Giordano v. Witzer*, 558 F.Supp. 1261 (E.D.Penn.1983).[8]

■ With regard to the consents, the issue is somewhat different. Sealaska does not contend that the action to void the consents is not a "legal action or proceeding in respect of" the consents. Instead, Sealaska argues that the clause provides that the parties consent to the jurisdiction of certain courts, but does not require that all litigation be maintained in those courts. In our view, the clause should be read as designating a mandatory forum. The relevant language provides that any suit "may be brought in the [Washington] courts or any other competent court as [Seattle-First] may elect." Sealaska's interpretation renders the first part of this sentence meaningless, for Seattle-First would not need Sealaska's consent before suing in Washington.[9] Although the clause could have been more clearly written, we conclude that the language should be read to mean that Pacific Western may sue *only* in Washington or other courts selected by Seattle-First.[10]

---

**8.** Sealaska argues that the problem with this clause is that it permits suits only in the Washington state courts and not in the federal courts, which is apparently where the petitioners want this case heard. The question before us, however, is whether the clause prohibits actions in this state, not whether the clause also prohibits actions in the federal courts.

**9.** Sealaska has considerable connections with the State of Washington.

**10.** Other jurisdictions have reached the same conclusion with respect to forum clauses similar to those found in the consents. For example, in *General Phoenix Corp. v. Malyon,* 88 F.Supp. 502 (S.D.N.Y.1949), an insurance policy provided that:

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be deter-

B. Are Those Forum Selection Clauses Which Do Encompass This Lawsuit Enforceable In Light Of The Allegations Of Bribery?

### 1. *Equipment Lease*

In *Volkswagenwerk v. Klippan,* 611 P.2d 498, 503 (Alaska 1980), this court rejected the common law rule that forum selection clauses are per se invalid and adopted in its place the reasonableness approach set out in *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In that case the United States Supreme Court stated that such clauses are enforceable absent a clear showing "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15, 92 S.Ct. at 1916, 32 L.Ed.2d at 523.

In a latter case, the Court specifically noted that it did not intend to imply in *Bremen* that any time a dispute arising out of a transaction is based upon an allegation of fraud, the clause is unenforceable. Rather, the clause is enforceable unless "the *inclusion of that clause in the contract* was the product of fraud or coercion." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n.14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270, 281 (1974) (emphasis in original). This rule necessarily follows from the premise that the intent of the parties is to be respected. It would be illogical for a court to say that the parties, bargaining with each other at arm's length, negotiated for a forum selection clause which specifically encompasses all possible actions relating to the contract, including suits to rescind on the ground of fraud in the inducement of the contract, and then hold that the clause is invalid because of fraud in the inducement of the contract.

■ Sealaska argues, nevertheless, that it should only be required to present evidence indicating that Crowson did in fact bribe the top executive officers of Pacific Western. It should not, it contends, be saddled with the almost impossible burden of proving that some portion of the bribe payments are specifically allocable to the forum selection clauses.

We agree with Sealaska on this point. If the allegations of bribery are correct, then there was no freely negotiated agreement between the parties. This is not a typical intentional misrepresentation case in which the negotiators are aggressively pursuing the best interests of the side they purport to represent. Here it appears that only one interest was represented at the bargaining table. Sealaska was allegedly misled by its own employees, individuals it thought, and had good reason to think, it could trust. Strong evidence indicates that Marshall, who signed the charters and equipment lease in Pacific Western's behalf, was really a covert agent of Crowson. Thus, everything in the contracts that works to Crowson's advantage was presumably done in return for the bribe payments. Crowson has the burden of establishing otherwise, a burden he clearly has not carried.[11]

■ The petitioners also argue that the "triable issue of fact" burden of proof placed on Sealaska was too low. They cite *Bremen, supra,* which requires that a party *"clearly show* that ... the clause was invalid for reasons such as fraud." 407 U.S. at 15, 92 S.Ct. at 1916, 32 L.Ed.2d at

---

mined in accordance with the law and practice of such Court.

The assured sued in state court and the underwriters (Lloyds of London) removed the case to federal court on diversity grounds. The federal court concluded that the assured had the exclusive right to select the jurisdiction and remanded the case back to state court. *See also Capital Bank & Trust v. Associated Intern. Ins.,* 576 F.Supp. 1522 (M.D.Louis.1984).

11. The fact that honest Sealaska representatives approved the agreements is not controlling. Crowson should not succeed on this issue merely because there were some employees of Sealaska who were not bribed. Crowson obviously believed that the Board of Directors of Sealaska would assume that Marshall had behaved in the company's interest, and would thus approve of the proposed agreements without close scrutiny. Crowson is thus estopped from now asserting otherwise.

**912**

523 (emphasis added).[12] We agree that this higher standard should have been used, but, given the great and uncontradicted evidence of fraud in this case, conclude that the error was harmless and no remand on this point is necessary.[13] The forum selection clause in the equipment lease is not enforceable. Therefore, Sealaska may litigate the validity of the equipment lease in Alaska.

### 2. Consents

Seattle-First contends that the forum selection clauses in the consents are enforceable since there has been no showing that it engaged in any fraudulent activity.[14] The superior court never addressed this specific issue and apparently assumed that Seattle-First's rights with regard to the contracts could not be any greater than those of Crowson. The bank claims that the consents are direct contracts between Pacific Western and Seattle-First. Thus, the bank is not merely an assignee of Crowson's interest. Seattle-First further argues that Sealaska must bear the burden of fraud perpetrated by its own agents and that Sealaska is estopped from now denying the validity of any of the forum selection clauses since the consents contain implicit affirmations that the underlying contracts being assigned are enforceable.

Sealaska has a number of responses. First, it argues that Seattle-First is merely an assignee and thus subject to all defenses available against Crowson, the assignor. Second, it argues that the consents, with their waiver of defense clause, are negotiable instruments and Seattle-First has not proved that it is a holder in due course. Third, it argues that Marshall was not authorized to execute the consents.[15] Fourth, it argues that Marshall's knowledge of the bribes cannot be imputed to Sealaska.[16] Fifth, Sealaska claims that four of the charters are not covered by the consents since the accompanying assignment refers to a $6.0 million obligation of Crowson, a loan which Sealaska says Crowson paid off. Finally, Sealaska argues that enforcement of the forum selection clause in the consents would fragment the litigation since Marshall did not purport to bind Sealaska to the consent agreements, but signed only on behalf of Pacific Western.

The various arguments made on both sides plainly illustrate some of the perils surrounding litigation over forum selection provisions. Both parties apparently believe that this court should, at this early stage in the proceedings and without the benefit of a trial, determine the relative culpability of the parties and whether or not the consents, in their entirety, are valid. This we decline to do. We focus instead only on the very narrow question of whether the forum selection clauses in the consents are valid.

**12.** See also Hoffman v. Burroughs Corp., 571 F.Supp. 545, 548 (N.D.Tex.1982) ("resisting party should bear 'a heavy burden of proof.'").

**13.** The petitioners cite Kupka v. Morey, 541 P.2d 740 (Alaska 1975) for the proposition that the trial court's finding must be reversed whenever an incorrect burden of proof is utilized. In Kupka, however, the court had to weigh conflicting evidence and could have easily reached a different result had it used the proper standard. A reading of the superior court's decision in this case, on the other hand, clearly indicates that it would have reached the same conclusion had the correct standard been used.

**14.** Sealaska argues that the issue of Seattle-First's innocence was not raised before the superior court and thus is not properly before this court. This claim is without merit, as the issue was raised a number of times below.

**15.** Sealaska cites Restatement of Agency § 73 comment b (1958) which states:
> Prima facie, a manager has no power to borrow money in connection with the operation of the business or to issue negotiable instruments in the name of the principal, unless the business conducted is one involving the borrowing of money or the issuing of negotiable instruments, such as banking and other financial businesses.

**16.** In support of this proposition, Sealaska cites Restatement of Agency § 280 (1958), which says:
> If an agent has done an unauthorized act or intends to do one, the principal is not affected by the agent's knowledge that he has done or intends to do the act.

The consents are direct contracts between Seattle-First and Sealaska. The consents purport to cover all the charters and the equipment lease. Whether they in fact do will be decided at trial. The consents purport to give Seattle-First the right to receive payment under the contracts irrespective of Crowson's conduct. The validity of the waiver clause will also be decided at trial. However, there is absolutely no evidence in the record indicating that Seattle-First was involved in, or had knowledge of, the alleged fraud. Therefore, we conclude that the forum selection clauses in the consents are valid and enforceable by Seattle-First.

### IV

Sealaska may not litigate the validity of the consents in Alaska. Sealaska may, if it chooses, continue to litigate in this state the claims it has against defendant Crowson.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

MATTHEWS, J., not participating.