**BAYPACK FISHERIES, L.L.C., Appellant,**

v.

**NELBRO PACKING COMPANY, a Washington corporation, and British Columbia Packers, Ltd., a Canadian corporation, Appellees.**

No. S–9036.

Supreme Court of Alaska.

Dec. 17, 1999.

As Amended Feb. 10, 2000.

James T. Brennan, Amy L. Vaudreuil, Hedland, Brennan, Heideman & Cooke, Anchorage for Appellant.

Michael Jungreis, Heller, Ehrman, White & McAuliffe, Anchorage, Frederick P. Corbit, Heller, Ehrman, White & McAuliffe, Seattle, Dexter A. Washburn, Law Offices of Dexter A. Washburn, Seattle, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

## I. INTRODUCTION

Baypack Fisheries, L.L.C., a Washington company formed by fishermen who fish Alaska waters, sued Nelbro Packing Company, a Washington corporation with fish processing plants in Alaska, for breach of contract, fraud, and other related claims. Late in discovery, Nelbro renewed a motion to dismiss the case for forum non conveniens, arguing that Alaska is a seriously inconvenient forum and that the case should be in Washington. The superior court granted the motion to dismiss. Because it was an abuse of discretion to grant a forum non conveniens dismissal so late in the case and because the facts did not support the conclusion that Alaska is a seriously inconvenient forum, we reverse.

## II. FACTS AND PROCEEDINGS

### A. Facts

In early 1995, a group of fishermen formed Baypack Fisheries as a Washington limited liability company. Although most of Baypack's members were Washington residents, almost all of them were professional fishermen who made their living fishing in Alaskan waters. Their plan was to purchase the RED SEA, a 360-foot processing vessel, moor the ship in Alaska, and process salmon caught by their members and other fishermen. The business office and financial dealings of Baypack remained in Washington.

Baypack's members contributed substantial financial resources towards the purchase of the RED SEA. The company borrowed the remainder of the purchase price from a Washington bank, West One Bank, now the U.S. Bank of Washington. The Bank's loan was secured by a first mortgage on the RED SEA.

On May 10, 1995, Baypack entered into a five-year exclusive marketing agreement with Nelbro Packing Company. Nelbro is a Washington corporation that owns and operates four fish processing plants in Alaska and markets Alaskan fish to Japanese buyers. In exchange for a sales commission, Nelbro agreed to market Baypack's fish and provide on-site training and technical assistance. Nelbro also agreed to provide Baypack with a $1.5 million line of credit to be repaid from the delivery and sale of the fish. Three months later, on August 10, 1995, Nelbro loaned Baypack an additional $343,928.

The relations between Baypack and Nelbro quickly soured. Baypack claims that Nelbro's promise to provide on-site technical expertise never materialized and that Baypack's operations suffered as a result. Baypack also claims that Nelbro sabotaged Baypack's relationship with the Bank in retaliation for Baypack's refusal to participate in Nelbro's price-fixing scheme. In July 1995, in a meeting at Nelbro's processing plant in Naknek, Alaska, Nelbro president Trevor Beeston allegedly accused Baypack's manager of paying too high a price for fish and "stealing" fishermen from other processors. When Baypack's manager refused to discuss lowering its prices, Nelbro allegedly retaliated by refusing to give a visiting Bank official access to information about the value of Baypack's fish. The Bank then suspended Baypack's line of credit and called for an immediate repayment of Baypack's entire balance.

In January 1996, Baypack terminated the marketing agreement with Nelbro because of its perception that Nelbro had breached the agreement. A new marketing agreement was then allegedly formed whereby Nelbro agreed to help finance Baypack's 1996 operations and its retrofitting of the RED SEA so that the ship could process herring and salmon more efficiently. Baypack claims that soon after it began renovating the RED SEA, Nelbro reneged on its promise to provide financial assistance. Without money to complete the renovations, Baypack was unable to make the RED SEA seaworthy in time for the 1996 fishing season.

Unable to pay its creditors, Baypack filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Washington in April 1996. The bankruptcy led to the foreclosure sale of the RED SEA, the primary proceeds of which went to the Bank.

### B. *Proceedings*

On September 20, 1996, Baypack initiated this lawsuit against Nelbro, Nelbro's parent corporations, British Columbia Packers, Weston Resources, Inc., and George Weston, Ltd. Baypack's complaint sought damages for breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with business and economic relationships, lender liability, and fraud.

In its answer, Nelbro counterclaimed for the balance due on the $1.5 million May 1995 loan. Nelbro also moved to dismiss the case on forum non conveniens grounds. The superior court denied the motion on July 31, 1997. The court found that although the cost and convenience of obtaining witnesses supported a Washington forum, the balance of private and public interests did not strongly favor rejecting the plaintiff's choice of an Alaska forum.

Substantial discovery followed the court's initial denial of the forum non conveniens motion. During discovery, the parties filed numerous important motions. Baypack moved to amend its complaint. Nelbro moved for summary judgment on its counterclaim. George Weston, Ltd., and Weston Resources, Inc., moved to dismiss for lack of personal jurisdiction. Finally, Nelbro moved for summary judgment on Baypack's claims for tortious interference, lender liability, and fraud. The superior court ruled on some of these motions, granting summary judgment in favor of Nelbro on its $1.5 million counterclaim and dismissing the claims against George Weston, Ltd., and Weston Resources, Inc., for lack of personal jurisdiction.

In preparation for trial, the parties filed their initial disclosures and agreed to deadlines for exchanging final witness lists. The parties agreed to a three-week trial, scheduled to commence on April 19, 1999.

On April 10, 1998, Nelbro renewed its motion for a forum non conveniens dismissal, arguing that discovery had demonstrated that Alaska was a seriously inconvenient forum and that the case should be tried in Washington where the majority of witnesses, documents, and parties were located. This time, the superior court agreed with Nelbro's arguments. On September 30, 1998—fourteen months after its initial decision denying dismissal and two years after the case was originally filed—the superior court dismissed the case for forum non conveniens. On January 21, 1999, the superior court entered final judgment on the forum non conveniens dismissal, the counterclaim summary judgment, and the Weston dismissal for lack of personal jurisdiction.

This appeal followed.

### III. *STANDARD OF REVIEW*

■ We review a superior court's decision regarding dismissal on forum non conveniens grounds for abuse of discretion.[1] Such a decision is

> committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.[2]

If the trial court has examined all relevant factors, an abuse of discretion exists only where the trial court's determination is "manifestly unreasonable."[3]

### IV. *DISCUSSION*

### A. *It was an Abuse of Discretion to Dismiss the Case for Forum Non Conveniens.*

■ Under the doctrine of forum non conveniens, a court should decline to exercise its jurisdiction only if the selected forum is a seriously inconvenient place to conduct litiga-

---

1. *See Bromley v. Mitchell,* 902 P.2d 797, 800 (Alaska 1995).

2. *Id.* (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

3. *Id.* at 801.

tion.[4] We have previously held that this doctrine has "only an extremely limited application" in cases where a plaintiff is a resident of the forum state.[5] Moreover, in all cases, a plaintiff's choice of forum should rarely be disturbed unless the balance of private and public interests weighs strongly in favor of dismissing the case.[6]

In *Crowson v. Sealaska Corp.*, we identified five factors relevant to the forum non conveniens determination:

> [T]he ease of access of proof, the availability and cost of obtaining witnesses, the possibility of harassment of the defendant in litigating in an inconvenient forum, the enforceability of the judgment, [and] the burden on the community in litigating matters not of local concern.... [7]

Reviewing the superior court's analysis of these five factors, we conclude that it was an abuse of discretion to find that these factors weighed strongly in favor of dismissing the case.

In this case, only two of the five factors were even marginally relevant to the forum non conveniens determination. Unlike the situation in *Bromley v. Mitchell*,[8] the superior court found no evidence that Baypack chose the Alaska forum in order to harass the defendants. Nor did the superior court find that there would be any problem enforcing an Alaska judgment against the defendants.

The superior court found that ease of access to proof weighed in favor of dismissing the case since the majority of witnesses and most documents were located in Washington. The court also found that the availability and cost of obtaining witnesses weighed in favor of dismissing the case. But these factors had lost much of their force at the time the motion was granted.

The status of a case with respect to discovery, motion practice, and trial scheduling can be a critical factor in determining a forum non conveniens motion. "[I]f extensive discovery on the merits has taken place or if the court has expended significant resources on the case, considerations of judicial economy weigh in favor of retaining the action." [9] Similarly, "whenever discovery in a case has proceeded substantially so that the parties already have invested much of the time and resources they will expend before trial, the presumption against dismissal ... greatly increases." [10]

When this case was dismissed, trial was scheduled to begin in less than seven months. A discovery master had actively supervised extensive discovery in Washington and was ready to serve as needed in the discovery that remained. Moreover, the critical documents had already been produced and numerous depositions had been taken.[11] Nelbro's attorneys had expended more than three thousand hours of professional time on the case, for which the attorneys had billed more than $500,000. We assume Baypack's efforts were of a similar magnitude. The court had already ruled on a number of issue-narrowing motions and numerous others had been submitted and awaited the court's rulings. Given this level of case development, circumstances would have to be truly extraordinary to justify a forum non conveniens dismissal.

■ Extraordinary circumstances did not exist. The factor relating to ease of access to proof had been largely mooted, because most of the evidence that would be relied upon at trial had already been obtained by discovery. The same is true regarding the availability and cost of obtaining witnesses. If non-party witnesses residing outside the

**4.** See Crowson v. Sealaska Corp., 705 P.2d 905, 907–08 (Alaska 1985).

**5.** *Bromley*, 902 P.2d at 800 (quoting *Crowson*, 705 P.2d at 908).

**6.** See *Crowson*, 705 P.2d at 908.

**7.** *Id.* (citations omitted).

**8.** 902 P.2d at 801–02.

**9.** 17 James Wm. Moore et al., *Moore's Federal Practice* ¶ 111.90, at 111–245 to 111–246 (3d ed.1999).

**10.** *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 614 (3d Cir.1991).

**11.** Nelbro does not dispute that discovery was considerably advanced by the time the trial court granted the dismissal.

state refuse to attend the trial, their depositions may be used. Moreover, Nelbro failed to show, as required by *Crowson,*[12] that there were specific critical non-party witnesses who would refuse to appear voluntarily.

Nelbro estimated the extra cost of transporting non-resident witnesses to an Alaska trial as $50,000. While this sum may appear significant, it is a relatively small amount in the context of this multi-million dollar case. For example, it is less than half of the court-awarded attorney's fees that Nelbro sought after it obtained the dismissal.[13]

Finally, the superior court found that Alaska's interest in this case is minimal compared to Washington's interest and that litigating the case in Alaska would burden an Alaska jury with matters of non-local concern. We disagree. This case involves allegations of fraud, price-fixing, and unfair business practices in the Alaska fishing industry. Although the primary parties, Baypack and Nelbro, are technically Washington-based companies, both companies conduct significant operations in Alaska. In addition, although the contracts and loans were negotiated and signed in Washington, the events giving rise to this lawsuit occurred both in Washington and in Alaska. Thus, the issues in this case are of local concern and Alaska's interest is at least as strong as that of Washington.

We hold that it was manifestly unreasonable to conclude that the balance of factors weighed heavily in favor of dismissal. There is nothing in the record to suggest that litigating this case in Alaska posed an undue hardship to the defendants or that the plaintiff purposely brought this case in Alaska to harass the defendants. Most importantly, by the time the superior court dismissed the case for forum non conveniens, the question as to whether Alaska was a "seriously inconvenient forum" was largely a moot issue. At that point, the parties had already invested

significant time and resources litigating the case in the Alaska forum. Absent an extremely compelling showing by Nelbro that it would be unduly prejudiced by an Alaska trial, the superior court should have retained jurisdiction. Because Nelbro failed to make such a showing, we hold that it was an abuse of discretion to grant a forum non conveniens dismissal.

B. *The Summary Judgment on Nelbro's Counterclaim and the Dismissal of the Weston Defendants for Lack of Personal Jurisdiction*

Because we are reversing the superior court's dismissal for forum non conveniens, we need not reach the merits of Baypack's appeal of summary judgment for Nelbro's $1.5 million counterclaim. We note only that under the original grant of summary judgment, Nelbro could not enforce the $1.5 million judgment until Baypack litigated its own claims on their merits, the resolution of which might count as an offset against the $1.5 million judgment.[14] Now that the final judgment has been vacated, Nelbro will similarly be restrained from enforcing the $1.5 million judgment until the entire case has concluded and the appropriate offsets have been resolved.

 Baypack abandoned its appeal related to the dismissal of Weston Resources, Inc. However, Baypack argues that the trial court abused its discretion in refusing to allow Baypack additional discovery time before the court ruled on the motion to dismiss George Weston, Ltd. We agree. On remand, the superior court should allow Baypack additional discovery regarding George Weston, Ltd.'s, jurisdictional ties to Alaska.

V. *CONCLUSION*

Because this case was dismissed for forum non conveniens after extensive discovery and

---

12. 705 P.2d at 908.

13. Most of the fees requested by Nelbro were covered by Civil Rule 82, which provides for partial reimbursement of fees expended by the prevailing party. Washington has no similar rule routinely awarding fees to the prevailing party.

14. The superior court conditioned its original grant of summary judgment on the requirement that its order "shall not foreclose plaintiff from pursuing the contractual and non-contractual claims it has asserted against the defendants...."

the expenditure of significant judicial resources, and because the balance of relevant factors did not then weigh in favor of dismissal, we conclude it was an abuse of discretion to dismiss Baypack's case. The decision of the superior court is REVERSED and this case is REMANDED for further proceedings.