**Miklos BODZAI, Appellant,**

v.

**ARCTIC FJORD, INC., Appellee.**

No. S–8828.

Supreme Court of Alaska.

Oct. 15, 1999.

Gerald W. Markham, Law Offices of Gerald W. Markham, and Mark A. Sandberg, Sandberg, Wuestenfeld & Corey, Anchorage, for Appellant.

Kenneth G. Schoolcraft, Jr., Le Gros, Buchanan & Paul, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

This case involves Miklos Bodzai's appeal of the superior court's dismissal of his personal injury action against Arctic Fjord, Inc. The superior court decided that Alaska was an improper forum for Bodzai's action based on a forum-selection clause in Bodzai's em-

ployment contract with Arctic Fjord. Because Bodzai's personal injury claims did not arise under the terms of his employment contract, we reverse the superior court's dismissal.

## II. FACTS AND PROCEEDINGS

Miklos Bodzai was injured while serving aboard the F/V ARCTIC STORM. He was present on the fishing vessel pursuant to a contract he signed with Arctic Fjord, Inc. in 1996.

Bodzai sued Arctic Fjord in Alaska state court. His complaint alleged three basic causes of action: (1) maintenance, cure, and unearned wages; (2) unseaworthiness; and (3) negligence. Arctic Fjord moved to dismiss the complaint pursuant to two Alaska Rules of Civil Procedure: Rule 3(d), which allows dismissal for *forum non conveniens*; and Rule 12(b)(3), which allows dismissal for improper venue. Arctic Fjord stated that this latter ground was "on the basis of a contractual forum selection clause." The relevant clause provided: "Any dispute which may arise under the terms of this contract shall be determined by the courts in King County, Washington."

The superior court granted Arctic Fjord's motion to dismiss. It ruled that the forum-selection clause in Bodzai's contract was valid and applied to Bodzai's claims. The dismissal was without prejudice to Bodzai's right to re-file his complaint in King County, Washington, the forum specified in the contract. The superior court declined to address Arctic Fjord's alternative grounds for dismissal—namely, *forum non conveniens*.

Bodzai appeals.

## III. DISCUSSION

### A. Standard of Review

■ Whether the forum-selection clause is enforceable is a question of law. We apply our independent judgment to such questions.[1]

### B. Bodzai's Claim for Maintenance and Cure Does Not Arise under the Terms of His Employment Contract.

■ In the unique parlance of maritime law, a seaman's[2] cause of action for "maintenance and cure" is defined as follows: " 'Maintenance' is the right of a seaman to food and lodging if he falls ill or becomes injured while in the service of the ship. 'Cure' is the right to necessary medical services. Both extend to the maximum point of recovery."[3] This duty on the employer's part is an absolute one.[4] The duty includes payment of the seaman's wages "at least so long as the voyage is continued."[5]

■ In *Brown v. State*, we quoted the Supreme Court of the United States for the proposition that "[t]he duty to provide maintenance and cure is imposed by the law itself as one annexed to the employment. Contractual it is in the sense that it has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident."[6] We further underlined this point by quoting from another Supreme Court case that held that "[w]hen the seaman becomes committed to the service of the ship the maritime law annexes a duty that no private agreement is

---

1. *See Abbott v. State*, 979 P.2d 994, 996 n. 6 (Alaska 1999) (citing *Langdon v. Champion*, 752 P.2d 999, 1001 (Alaska 1988); *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 766–67 (Alaska 1987)).

2. The term "seaman" is a maritime law term of art, not exclusive to one gender.

3. *Brassea v. Person*, 985 P.2d 481, 483 (Alaska 1999) (quoting 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, 348 (2d ed.1994)).

4. *See Brown v. State*, 816 P.2d 1368, 1371 (Alaska 1991) ("This duty does not depend upon fault.") (quoting *De Zon v. American President*

*Lines*, 318 U.S. 660, 667, 63 S.Ct. 814, 87 L.Ed. 1065 (1943)) (internal quotation marks omitted).

5. Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 6–2, at 275 (2d ed.1975) (quoting *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903)).

6. *Brown*, 816 P.2d at 1371 (quoting *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 371, 53 S.Ct. 173, 77 L.Ed. 368 (1932)) (internal quotation marks omitted).

competent to abrogate." [7] Further, we noted approvingly in *Brown* that "[t]he federal courts have consistently stated that sailors' rights to maintenance and cure cannot be abrogated by contract." [8]

Arctic Fjord argues that "courts have recognized that a seaman's right to maintenance and cure 'arises out of the contract of employment.'" The Fifth Circuit cases that it cites do indeed contain language to that effect; [9] however, in *Brown*, we reached a different conclusion, one more consistent with the Supreme Court's jurisprudence on the matter. It is well-established that "this court is not bound by decisions of federal courts other than the United States Supreme Court on questions of federal law." [10]

The other case that Arctic Fjord cites in support of its position is a Supreme Court opinion; however it, in fact, supports Bodzai on this issue. In *Cortes v. Baltimore Insular Line, Inc.*, Justice Cardozo held that the duty of a maritime employer to provide injured seamen with maintenance and cure "is one annexed by law to a relation, and annexed as an inseparable incident *without heed to any expression of the will of the contracting parties.*" [11] In other cases, the Supreme Court has likewise noted: "In the United States the obligation has been recognized consistently *as an implied provision in contracts of marine employment.*" [12] Therefore, it cannot be said that Arctic Fjord's duty "arises under the terms" of the contract Bodzai signed. Rather, whatever those

terms, the duty to provide maintenance and cure was annexed to that contract by operation of law.

The Supreme Court reaffirmed the breadth of the right to maintenance and cure and its divorce from contractual limitation in *Farrell v. United States:* [13]

> It has been the merit of the seaman's right to maintenance and cure that it . . . can be . . . administered without technical considerations. . . . For any purpose to introduce a graduation of rights . . . based on some relative proximity of the activity at time of injury to the "employment" or the "service of the ship" would alter the basis and be out of harmony with the spirit and function of the doctrine. . . . [14]

The apparent confusion in Arctic Fjord's argument on this point is well addressed by a leading commentary on maritime law, Gilmore and Black's treatise. "The right to maintenance and cure arises when the seaman signs articles and continues until he has received his discharge. It is the fact of employment, or, more accurately, *the fact that the seaman is engaged in the service of the ship which creates the right and not the form of contract:* a term in a contract under which the seaman purported to waive the right would unquestionably be held void." [15]

The argument that the maintenance and cure duty "arises under the terms" of Bodzai's contract, then, is inconsistent with both this court's and the Supreme Court's prece-

---

**7.** *Id.* (quoting *De Zon*, 318 U.S. at 667, 63 S.Ct. 814) (internal quotation marks and ellipsis omitted).

**8.** *Id.* at 1373 (citing *Cortes*, 287 U.S. at 371, 53 S.Ct. 173; *Gardiner v. Sea–Land Serv., Inc.*, 786 F.2d 943, 946 (9th Cir.1986); *Barnes v. Andover Co.*, 900 F.2d 630, 637 (3d Cir.1990)).

**9.** *See Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 221–23 (5th Cir.1998) (holding that contract clause providing that Philippine court had "original and exclusive jurisdiction over any and all disputes or controversies arising out of or by virtue of this Contract" applied to seamen's personal injury claims); *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 185 (5th Cir. Unit A Sept.1981) ("Although an injured seaman's right to these forms of support is implied by law, it 'arises out of the contract of employment.'") (citations omitted).

**10.** *Totemoff v. State,* 905 P.2d 954, 963 (Alaska 1995) (citation omitted).

**11.** *Cortes,* 287 U.S. at 372, 53 S.Ct. 173 (emphasis added).

**12.** *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 730, 63 S.Ct. 930, 87 L.Ed. 1107 (1943) (emphasis added) (citing *Harden v. Gordon*, 11 F. Cas. 480, 482 (C.C.D.Maine 1823) (No. 6,047); *The Atlantic,* 2 F. Cas. 121, 130 (C.C.S.D.N.Y.1849) (No. 620); *Cortes,* 287 U.S. at 371, 53 S.Ct. 173).

**13.** 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949).

**14.** *Id.* at 516, 69 S.Ct. 707.

**15.** Gilmore & Black, *supra* note 5, § 6–7, at 287 (emphasis added) (footnotes omitted).

dent, as well as with scholarly opinion. Arctic Fjord provides no compelling reason for us to depart from this precedent. Bodzai's claims for maintenance and cure are not controlled by the contract's forum-selection clause, and the superior court erred in dismissing the claims for improper venue.

### C. Bodzai's Claim for Unseaworthiness Does Not Arise under the Terms of His Employment Contract.

It is even more clear that Bodzai's right to recover against Arctic Fjord for unseaworthiness does not "arise under" the terms of his employment contract. The basis for a seaman's right to recovery under this theory is "the shipowner's duty to provide a seaworthy vessel." [16] As we held in *Brown*, the duty "to provide a vessel and appurtenances reasonably fit for their intended use" is absolute.[17]

In *Brown*, we adopted the Supreme Court's holding in *Sieracki* that "liability is neither limited by conceptions of negligence *nor contractual in character*. It is a form of absolute duty owing to all within the range of its humanitarian policy." [18] We went on to emphasize that, like an employer's duty to provide maintenance and cure, "[t]he right to recover under the doctrine of seaworthiness is also plainly not susceptible to contractual modification." [19] We quoted the Supreme Court in driving this point home: "[T]he necessary consequences of this absolute duty are that the obligation of seaworthiness cannot be shifted about, limited, or escaped by contracts or the absence of contracts and that *the shipowner's obligation is rooted, not in contracts, but in hazards of the work*." [20]

Therefore, Bodzai's argument that his seaworthiness claim does not "arise under" the terms of his employment contract is correct. The superior court should not have dismissed this claim based on the contract's forum-selection clause.

### D. Bodzai's Jones Act Claim Does Not Arise under the Terms of His Employment Contract.

Bodzai's final claim, that Arctic Fjord negligently caused his injuries, is encompassed by the federal Jones Act.[21] The Jones Act provides, in part: "Any seaman who shall suffer personal injury in the course of his employment may ... maintain an action for damages at law...." [22] In enacting the Jones Act, Congress apparently "intended to change the maritime law as stated in *The Osceola* under which an injured seaman could recover more than his maintenance and cure only in an action based on unseaworthiness and could not recover damages for negligence of master or crew in the navigation or management of the ship." [23]

Just as Bodzai's common-law maritime claims do not "arise under the terms" of his employment contract, neither does his Jones Act claim.[24] Rather, this claim "arises under" the Jones Act itself, which "provides a right of action for injury or death to sailors caused by the negligence of their employers." [25] The right is dependent on the employment contract only inasmuch as the contract creates the employer-employee re-

**16.** *Brown* at 1372 (citing Gilmore and Black, *supra* note 5, §§ 6–38 to 6–44(a), at 383–404).

**17.** *Id.* (citations omitted).

**18.** *Id.* at 1372 (emphasis added) (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94–95, 66 S.Ct. 872, 90 L.Ed. 1099 (1946)).

**19.** *Id.* at 1373 (citing *Sieracki*, 328 U.S. at 94–95, 66 S.Ct. 872).

**20.** *Id.* at 1375 (quoting *Sieracki*, 328 U.S. at 95, 66 S.Ct. 872; *Reed v. S.S. Yaka*, 373 U.S. 410, 414–15, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963)) (internal citations and quotation marks omitted) (emphasis added).

**21.** 46 U.S.C.App. § 688(a) (1999).

**22.** 46 U.S.C.App. § 688(a).

**23.** Gilmore & Black, *supra* note 5, § 6–20, at 325 (reviewing legislative text and history).

**24.** *See Lauritzen v. Larsen*, 345 U.S. 571, 588, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) (holding that "a Jones Act suit is for tort" and "does not seek to recover anything due under the contract or damages for its breach").

**25.** *Brown*, 816 P.2d at 1372.

lationship, which is a predicate for liability to attach.[26]

### E. Whether Arctic Fjord May Gain a Dismissal for Forum Non Conveniens is Irrelevant to this Appeal.

 Finally, Arctic Fjord cites several *forum non conveniens* cases in which seamen were denied their choice of forum. These cases are not relevant to this appeal. As one of the cases cited by Arctic Fjord states, the *forum non conveniens* determination "is committed to the sound discretion of the trial court."[27] Multiple factors are to be weighed when trial courts make these decisions.[28] In contrast, the question of the enforceability of the forum-selection clause in Bodzai's contract is a purely legal issue, not the sort of fact-intensive, flexible inquiry undertaken when trial courts examine *forum non conveniens* motions.

This case itself demonstrates why the two issues may not be collapsed. If the facts are as Arctic Fjord alleges, Arctic Fjord may prevail on its *forum non conveniens* theory, which it made in the alternative in the trial court, despite the unenforceability of the forum-selection clause. Arctic Fjord states that "[t]he parties and this litigation have numerous contacts with the State of Washington and virtually none with Alaska," and then goes on to list in detail what those contacts are. A superior court might find—after full opportunities for both sides to present their evidence and argument—that Bodzai's action should be dismissed on *forum non conveniens* grounds, or it might not. We express no opinion on the proper determination of that issue. But it is a separate issue from the efficacy of the contractual forum-selection clause. The summary dismissal of Bodzai's suit based on the contrac-

tual forum-selection clause was improper as a matter of law.

### IV. CONCLUSION

The superior court erred when it dismissed Bodzai's claims based on the forum-selection clause, because Bodzai's claims do not "arise under the terms" of his employment contract. Accordingly, the superior court's order is REVERSED and the case is REMANDED for further proceedings.

---

26. *See* Gilmore & Black, *supra* note 5, § 6–21(a), at 337.

27. *Bromley v. Mitchell*, 902 P.2d 797, 800 (Alaska 1995) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). *See also Crowson v. Sealaska Corp.*, 705 P.2d 905 (Alaska 1985).

28. In *Crowson* we identified some of these factors: "[T]he ease of access of proof, the availability and cost of obtaining witnesses, the possibility of harassment of the defendant in litigating in an inconvenient forum, the enforceability of the judgment, the burden on the community in litigating matters not of local concern, and the desirability of litigating local matters in local courts." 705 P.2d at 908 (quoting *Goodwine v. Superior Court*, 63 Cal.2d 481, 47 Cal.Rptr. 201, 407 P.2d 1 (1965)). We observed in *Crowson* that "[U]nless the balance of these factors is strongly in favor of defendants, plaintiff's choice of forum should rarely be disturbed." *Id.*