Miguel NUNEZ, Appellant,

v.

AMERICAN SEAFOODS, Appellee.

No. S–9875.

Supreme Court of Alaska.

July 12, 2002.

Lanning M. Trueb, Beard, Stacey, Trueb, Jacobsen & Stehle, LLP, Anchorage, for Appellant.

Michael A. Barcott and Stephen C. Smith, Holmes, Weddle & Barcott, Seattle, Washington, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

After injuring himself while working aboard the F/T Ocean Rover in Dutch Harbor, seaman Miguel Nunez sued his employer, American Seafoods, in the Alaska Superior Court at Dillingham. He appeals that court's order dismissing his case based on a contractual forum selection clause that required him to sue in United States District Court in Seattle, Washington. We reverse,

holding that the employment contract's forum selection clause is invalid because it violates Nunez's right to sue under the Jones Act in any eligible forum.

## II. FACTS AND PROCEEDINGS

Miguel Nunez was a seaman employed by American Seafoods on the fishing tender F/T OCEAN ROVER when he was injured in port at Dutch Harbor in 1999. Nunez was getting the gang way out when a deck rail of the OCEAN ROVER collapsed and Nunez fell twenty feet to the dock below. The fall severely injured Nunez.

American Seafoods had employed Nunez on various fishing vessels beginning in 1996. Nunez signed a fishing agreement with American Seafoods for his work on the OCEAN ROVER on July 20, 1999. The agreement included a forum selection clause specifying that "any legal action ... involving this contract or any incident or injury occurring aboard the Vessel ... may be brought only in the Federal District Court for the Western District of Washington at Seattle."

Nunez nonetheless filed suit against American Seafoods in superior court at Dillingham, alleging admiralty jurisdiction under the federal saving to suitors clause[1] and the Jones Act.[2] American Seafoods moved to dismiss based on the forum selection clause. Superior Court Judge Fred Torrisi heard oral arguments in Dillingham, upheld the forum clause, and granted American Seafoods' motion to dismiss "without prejudice to refile in the U.S. District Court in Seattle." Nunez appeals.

1. 28 U.S.C. § 1333 (1988).

2. 46 U.S.C.App. § 688 (1988).

3. *Hutton v. Realty Executives, Inc.*, 14 P.3d 977, 979 (Alaska 2000).

4. *Bodzai v. Arctic Fjord, Inc.*, 990 P.2d 616, 618 (Alaska 1999).

5. *Bjornsson v. U.S. Dominator, Inc.*, 863 P.2d 235, 237 (Alaska 1993).

6. 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949).

7. *Id.* at 265, 70 S.Ct. 26.

## III. ANALYSIS

### A. Standard of Review

This court reviews a grant of a motion to dismiss de novo.[3] "Whether [a] forum-selection clause is enforceable is a question of law" to which we apply our independent judgment.[4] We also review de novo whether a fishing agreement complies with relevant federal admiralty law.[5]

### B. Discussion

Nunez argues that the forum selection clause is void because it violates federal law. He argues that the Jones Act expressly incorporates the provisions of the Federal Employer's Liability Act (FELA) and that in *Boyd v. Grand Trunk Western Railroad Co.*,[6] the United States Supreme Court expressly interpreted section 5 of the FELA to declare void any contract provision within the Act's coverage that limits an employee's "right to bring suit in any eligible forum."[7] American Seafoods, citing *Carnival Cruise Lines, Inc. v. Shute*[8] and *M/S BREMEN v. Zapata Off-Shore Co.*,[9] counters that the Supreme Court has more recently declared maritime forum selection clauses to be presumptively valid; according to American Seafoods, Nunez has failed to overcome this presumption.[10]

We find Nunez's arguments to be more persuasive. *Carnival Cruise Lines* and *M/S BREMEN* undeniably recognize that a strong presumption of validity attaches to forum selection clauses under general maritime law.[11] But Nunez filed his complaint under the saving to suitors clause and the Jones Act, not under general maritime law.

As we have noted in previous cases,

8. 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

9. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

10. In dismissing Nunez's complaint, the superior court accepted American Seafoods' position.

11. *Carnival Cruise Lines*, 499 U.S. at 593–94, 111 S.Ct. 1522; *M/S BREMEN*, 407 U.S. at 10, 92 S.Ct. 1907.

the "saving to suitors" clause [12] generally "means that a suitor asserting an *in personam* admiralty claim may elect to sue in a 'common law' state court through an ordinary civil action. In such actions, the state courts must apply the same substantive law as would be applied had the suit been instituted in admiralty in a federal court." [13]

In the present case, the Jones Act prescribes the substantive maritime law by providing a right of action allowing injured sailors to sue their employers for negligence.[14] The substantive rights conferred by the Jones Act are not the same as those conferred by general maritime law: in enacting the Jones Act, Congress "intended to change the maritime law as stated in *The Osceola* under which an injured seaman could recover more than his maintenance and cure only in an action based on unseaworthiness and could not recover damages for negligence of master or crew in the navigation or management of the ship." [15] Hence, "[t]he substantive rules of maritime law, as modified by the Jones Act, apply[.]" [16]

The Jones Act accomplishes its goal of giving injured seamen a right of action against their employers by incorporating the rights conferred to railway workers under the FELA; [17] in relevant part, the Jones Act provides:

Any seaman who shall suffer personal injury in the course of his employment may ... maintain an action for damages at law ... and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway workers shall apply. . . . [18]

As we recognized in *Brown v. State*,

The [Jones Act's] language concerning the rights and remedies of railway employees has the effect of extending to sailors the provisions of the [FELA]. Most importantly, sailors have the right to sue shipowners for damages for injury or death "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such [shipowner], or by reason of any defect or insufficiency, due to its negligence, in its ... equipment." [19]

The Jones Act thus effectively places an injured seaman like Nunez in the shoes of an injured FELA railway worker:

[The Jones Act] expressly provides for seamen the cause of action—and consequently the *entire judicially developed doctrine of liability*—granted to railroad workers by the FELA. The deceased seaman here was in a position perfectly analogous to that of the railroad workers [in a line of cases allowing recovery without a showing of negligence] and the principles governing those cases clearly should apply here.[20]

And as we further recognized in *Brown*, the Supreme Court's interpretation of section 5 of the FELA in *Boyd v. Grand Trunk Western* strictly curtails an employer's right to contractually limit a worker's substantive rights:

Section 5 of FELA closely limits the ability of an employer to restrict its own liability: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of

12. The saving to suitors clause is contained within 28 U.S.C. § 1333, which states, in relevant part:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

13. *Brown v. State*, 816 P.2d 1368, 1370 (Alaska 1991) (quoting *Shannon v. City of Anchorage*, 478 P.2d 815, 818 (Alaska 1970)) (footnotes omitted).

14. *Brown*, 816 P.2d at 1372 (citing 46 U.S.C.App. § 688(a) (1988)).

15. GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY 325 (2d ed.1975) (footnote omitted)

(citing, among other cases, *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903)).

16. *Brown*, 816 P.2d at 1371 (citing *Shannon*, 478 P.2d at 818).

17. 45 U.S.C. §§ 51–60 (1988).

18. 46 U.S.C.App. § 688(a).

19. *Brown*, 816 P.2d at 1372 (internal citations omitted) (quoting 45 U.S.C. § 51 (1988)).

20. *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) (emphasis added).

which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void...." The Supreme Court has found that "Congress wanted § 5 to have the full effect that its comprehensive phraseology implies." [21]

The specific issue considered in *Boyd* was the validity of a contractual forum selection agreement limiting an injured railroad worker's choice of forum under the FELA.[22] Section 6 of the FELA gives injured railway workers the choice of filing their claims in a state or federal forum.[23] Relying on section 5's categorical prohibition of contracts exempting employers from FELA liability,[24] *Boyd* invalidated the disputed forum selection agreement, holding that a worker's "right [under section 6] to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of § 5" and so could not be restricted by a contractual provision.[25]

Here, the saving to suitors clause gives Nunez a comparable right to select a state or federal forum. Because Nunez stands "in a position perfectly analogous to that of [a railroad worker under the FELA]," [26] the scope of this right to file suit in his forum of choice must be gauged under section 5, just as in *Boyd*. And *Boyd* dictates the conclusion that section 5 of the FELA requires that Nunez's right to bring suit in "any eligible forum" be deemed substantive and that any contractual provision purporting to limit it be deemed void.

Contrary to American Seafoods' position, nothing in *Carnival* or *M/S BREMEN* undermines *Boyd*. As already indicated, *Carnival* and *M/S BREMEN* establish the presumptive validity of forum selection clauses under general maritime law, whereas Nunez brings his action under maritime law as modified by the Jones Act, which incorporates FELA. Indeed, *M/S BREMEN* approvingly cites *Boyd* when discussing an important caveat to its rule favoring enforcement of forum selection clauses: "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision. *See, e.g.,* [*Boyd*]." [27] If anything, then, *M/S BREMEN* reconfirms the vitality of *Boyd's* declaration that section 5 of the FELA renders forum selection clauses unenforceable.

Nor does American Seafoods cite any other persuasive authority or reason to establish that *Boyd* does not apply to a Jones Act claim.[28] American Seafoods relies heavily on *Marinechance Shipping, Ltd. v. Sebastian*[29] and its progeny to fortify its position.[30] But these cases are inapposite, for they involve foreign sailors who were employed by foreign shippers, served on foreign flagged vessels, and were employed under contracts that called for resolution of their legal disputes in other nations; thus, these cases address problems of uniformity and comity that are unique to their international settings and do not purport to apply—or even to meaningfully consider—the Jones Act or the continued

---

21. *Brown*, 816 P.2d at 1373 (quoting, respectively, 45 U.S.C. § 55 (1988) and *Boyd v. Grand Trunk W. R.R. Co.*, 338 U.S. 263, 265, 70 S.Ct. 26, 94 L.Ed. 55 (1949)).

22. *Boyd*, 338 U.S. at 263, 70 S.Ct. 26.

23. *Id.* at 265, 70 S.Ct. 26; 45 U.S.C. § 56.

24. 45 U.S.C. § 55.

25. *Boyd*, 338 U.S. at 265, 70 S.Ct. 26.

26. *Kernan*, 355 U.S. at 439, 78 S.Ct. 394.

27. 407 U.S. at 15, 92 S.Ct. 1907. This passage from *M/S BREMEN* was also quoted approvingly by this court in *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P.2d 498, 504 (Alaska 1980).

28. American Seafoods does attempt to distinguish *Boyd* on its facts by noting that it involved a post-injury forum selection contract. But nothing in *Boyd* indicates that the Court gave any weight to the timing of the contractual provision. And in any event, our case law suggests that a pre-injury contractual compromise of Jones Act rights should be deemed presumptively more questionable, not less questionable, than a post-injury compromise. *See Brown*, 816 P.2d at 1376.

29. 143 F.3d 216 (5th Cir.1998).

30. *See, e.g., Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298 (5th Cir.1998); *Sabocuhan v. Geco–Prakla*, 78 F.Supp.2d 603 (S.D.Texas 1999); *Valle v. Chios Venture Shipping*, 1999 WL 155942 (E.D.La., March 17, 1999); *Lejano v. K.S. Bandak*, 705 S.2d 158 (La.1997).

vitality of *Boyd*. Here, by contrast, the facts of Nunez's case lack any significant international dimension, and the Jones Act's incorporation of the FELA squarely controls the case's outcome.[31]

The superior court's decision to enforce Nunez's forum selection clause in the present case rested largely on the court's perception that our recent decision in *Bodzai v. Fjord*,[32] tacitly found *Boyd* inapplicable to Jones Act cases by failing to mention that decision. But *Bodzai's* silence on the point does not support this conclusion.[33]

In *Brown v. State*, we recognized the continuing vitality of *Boyd* in the Jones Act context and held that "[s]ection 5 of FELA closely limits the ability of an employer to restrict its own [Jones Act] liability[.]"[34] Nothing presented by American Seafoods has persuaded us to alter this decision.

## IV.  CONCLUSION

The superior court's order of dismissal is REVERSED.

---

**31.**  American Seafoods also relies on the United States District Court's decision in *Willard v. The Fishing Company of Alaska*, 1995 A.M.C. 1358 (D.Alaska).  But *Willard*, too, is inapposite. There, several injured Jones Act seamen employed by a Seattle based company filed suit in the United States District Court in Anchorage; their employer relied on contractual choice-of-forum clauses to transfer venue to federal court in Washington.  Because the seamen opted to bring their suits in a federal forum rather than in a state forum, the district court in *Willard* correctly recognized that the cases presented a question of change of venue rather than a change of forum and were therefore governed by the Jones Act's internal venue provisions—as opposed to the forum provision of the saving to suitors clause.  *Id.* at 1359–60.  As the district court also correctly observed in *Willard*, the Supreme Court has construed the Jones Act's venue clause to have no substantive significance.  *Id.* at 1360. Moreover, because under the facts of *Willard* the Jones Act's venue clause would have required the plaintiffs in that case to file their action in Washington—the employer's residence—rather than Alaska, *see* 46 U.S.C.App. § 688(a), the plaintiff's election to file in a federal forum in Alaska could not have been deemed to be the selection of an "eligible forum" under *Boyd*.

**32.**  990 P.2d 616 (Alaska 1999).

**33.**  In *Bodzai* we considered the validity of a forum selection clause that required Bodzai, an injured seaman, to file any claims arising "under the terms" of his employment contract in Washington. Bodzai asserted three separate admiralty claims in state court, only one of which was a Jones Act claim.  *Id.* at 617.  As an argument common to all three claims, Bodzai asserted that none arose "under the terms" of his employment contract and, consequently, none was barred by the forum selection clause.  *Id.* at 618.  In contrast, although Bodzai alternatively argued that the forum selection clause was barred by *Boyd's* prohibition against contractual limitations of liability, that argument only applied to his Jones Act claim.  In deciding *Bodzai*, we addressed and resolved all three claims on their common issue, holding that none of the claims arose under the terms of Bodzai's contract.  Resolving the entire case on that basis left us no occasion to reach Bodzai's alternative theory for disposing of the Jones Act claim—that the forum selection was precluded by *Boyd*. In that context, then, our silence concerning Bodzai's alternative theory signaled no hidden view as to its merits.

**34.**  816 P.2d 1368, 1373 (Alaska 1991).