[No. 56873-6-I.   Division One.   September 11, 2006.]

JACK OLTMAN ET AL., *Appellants*, v. HOLLAND AMERICA LINE USA, INC., ET AL., *Respondents*.

*Noah C. Davis* (of *In Pacta, PLLC*), for appellants.

*John P. Hayes* and *Andrew G. Yates* (of *Forsberg & Umlauf, PS*), for respondents.

¶1 SCHINDLER, J. — Holland America Line's cruise ship ticket requires passengers to file lawsuits in the United States District Court for the Western District of Washington in Seattle within one year of injury. During a Holland America cruise that sailed from Valparaiso, Chile, on March 31, 2004, Jack Oltman and his mother, Bernice Oltman, contracted a gastrointestinal disease. On March 30, 2005, Jack, Bernice, and Jack's spouse, Susan Oltman, (collec-

tively Oltman) filed a lawsuit against Holland America Line USA, Inc., and Holland America Line, Inc. (collectively Holland America), in King County Superior Court.[1] Jack and Bernice alleged negligence, breach of contract, and fraud in the inducement. Susan alleged loss of consortium. On summary judgment, the trial court dismissed Oltman's lawsuit based on the forum selection clause in the cruise and "cruisetour" contract (cruise ship contract). The court refused to strike Holland America's affirmative defenses of improper venue and the forum selection clause, or the attorney's declaration in support of summary judgment. We conclude federal law governs and the forum selection clause in Holland America's cruise ship contract is valid and enforceable. We also conclude the trial court did not abuse its discretion in refusing to strike Holland America's affirmative defenses or the attorney declaration. We affirm the trial court's dismissal of Oltman's lawsuit against Holland America.

## FACTS

¶2 On March 18, 2004, Bernice and Jack Oltman booked tickets through Vacations To Go Travel Agency to sail from Valparaiso, Chile, to San Diego, California, on Holland America's cruise ship.

¶3 Before departure, Holland America issues travel documents to all passengers. The travel documents include the cruise ship ticket and the cruise ship contract. Holland America requires passengers to present the contract and the cruise ship ticket before boarding.

¶4 Bernice and Jack received their tickets and the cruise ship contract approximately six days before boarding.[2] The cruise ship contract contains a forum selection clause. The

---

[1] For the sake of clarity and when necessary, we refer to Jack, Bernice, and Susan Oltman by their first names. We intend no disrespect by doing so.

[2] During discovery, Holland America produced a travel document booklet identical in all respects to the one issued to Bernice and Jack, except in pagination.

forum selection clause is printed in all caps and is the first substantive piece of information in the cruise ship contract after the itinerary. The cruise ship contract also informs passengers they must sue within one year of injury in the United States District Court for the Western District of Washington in Seattle or, if the court does not have federal jurisdiction, in state court in King County.[3]

¶5 Bernice and Jack boarded the ship in Valparaiso, Chile on March 31, 2004. During the cruise, a gastrointestinal disease outbreak occurred. Bernice and Jack alleged they contracted the disease. On March 30, 2005, Oltman sued Holland America in King County Superior Court. Bernice and Jack alleged negligence, breach of contract, and fraud in the inducement. Susan alleged loss of consortium.

¶6 Holland America filed a notice of appearance on April 8, 2005, and filed an answer on April 29, 2005. Holland America's answer asserted the forum selection clause in the cruise ship contract and improper venue as affirmative defenses. Oltman filed a motion to strike Holland America's affirmative defenses because the answer was filed 11 days after the 20-day deadline. The trial court denied the motion to strike.

¶7 Holland America filed a motion for summary judgment, seeking dismissal of Oltman's lawsuit based on improper venue and the forum selection clause. In support of the motion for summary judgment, Holland America's attorney submitted a declaration with attached published and unpublished court decisions. The court denied Oltman's motion to strike the attorney's declaration and granted summary judgment for Holland America and dismissed Oltman's lawsuit.

---

[3] The provisions of Holland America's cruise ship contract, including the forum selection clause at issue and the one-year time provision, are also available on the company's web site: www.hollandamerica.com. The web site's language matches that of the travel document booklets issued to passengers exactly.

## ANALYSIS

*Motion To Strike Affirmative Defenses*

¶8 Holland America filed its answer and affirmative defenses 31 days instead of 20 days after service of the summons and complaint. For the first time on appeal, Oltman argues Holland America's delay in filing its answer and affirmative defenses prejudiced Oltman.

¶9 Below, Oltman asked the court to "strike Defendant's affirmative defenses as frivolous and irrelevant for failure to plead them in a timely manner, and more specifically, to strike the 'improper venue' defense as frivolous" under RCW 4.32.170.[4] On appeal, Oltman argues that if Holland America filed its answer 20 days after service, the lawsuit could have been refiled in the United States District Court for the Western District of Washington at Seattle.[5] "Generally, failure to raise an issue before the trial court precludes a party from raising it on appeal." *Fischer-McReynolds v. Quasim*, 101 Wn. App. 801, 814, 6 P.3d 30 (2000); RAP 2.5(a). Because Oltman did not raise the issue of prejudice below, this court will not consider it on appeal.[6] Nonetheless, we conclude the trial court did not abuse its discretion in refusing to strike the answer and affirmative defenses.

---

[4] RCW 4.32.170 provides: "Sham, frivolous and irrelevant answers and defenses may be stricken out on motion, and upon such terms as the court may in its discretion impose."

[5] Clause A.3, on page 16 of the travel documents booklet, entitled "Time Limits for Noticing Claims and Filing and Service of Lawsuits," provides, "you may not maintain a lawsuit against us or the Ship for loss of life or bodily injury unless written notice of the claim is delivered to us not later than six (6) months after the day of death or injury, the lawsuit is commenced not later than one (1) year after the day of death or injury."

[6] Oltman argues prejudice is established because the one-year time limit to file suit would not have expired until late April, rather than March 31, 2005 (one year from the date of departure). Appellate courts will not consider assertions of fact not supported in the record. *Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 619, 937 P.2d 1158 (1997). But Oltman did not produce evidence supporting his argument that the case could have been refiled in the proper court had the answer been filed within 20 days of service.

¶10 This court reviews a trial court's decision denying a motion to strike for abuse of discretion. *King County Fire Prot. Dist. No. 16 v. Hous. Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994).[7] Oltman's reliance on CR 12(h)(1)(B) and *Davidson v. Hensen*, 135 Wn.2d 112, 954 P.2d 1327 (1998), is misplaced. CR 12(h)(1)(B) only applies when the party omits the defense from a CR 12(b) motion or from its responsive pleading. In *Davidson*, no complaint or answer was ever filed in court. The court held homeowners waived the affirmative defense of nonregistration by waiting until after the arbitration hearing before raising the defense for the first time. *Davidson*, 135 Wn.2d at 123. Oltman also cites no authority establishing affirmative defenses pleaded in an untimely answer are waived.[8] In any event, Holland America did not waive its right to assert the affirmative defenses. As provided in CR 12(h), Holland America set forth its affirmative defenses in the first responsive pleading it filed. We conclude the trial court did not abuse its discretion in denying Oltman's motion to strike the affirmative defenses.

*Attorney Declaration*

¶11 Holland America's attorney submitted a declaration of supplemental legal authority in support of the motion for summary judgment. In the declaration, the attorney listed nine cases filed in state and federal court and stated that in each case the court had enforced identical Holland America forum selection provisions. The attorney attached six federal court decisions and three King County Superior Court summary judgment orders. Two of the six federal court decisions were published decisions, four were not.

---

[7] Abuse of discretion occurs when the decision is "manifestly unreasonable or based on untenable grounds." *Ryan v. State*, 112 Wn. App. 896, 899, 51 P.3d 175 (2002) (citing *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

[8] Where a party's "failure to plead a defense affirmatively does not affect the substantial rights of the parties, the noncompliance will be considered harmless." *Mahoney v. Tingley*, 85 Wn.2d 95, 100, 529 P.2d 1068 (1975); *see also Bernsen v. Big Bend Elec. Coop., Inc.*, 68 Wn. App. 427, 434, 842 P.2d 1047 (1993).

¶12 Oltman moved to strike the declaration and the authority cited on the ground that the attorney improperly cited to unpublished authority under RAP 10.4(h). Oltman also argued the declaration violated Rules of Professional Conduct (RPC) 3.7, which prohibits a lawyer from acting as an advocate and as a witness in the same trial. The court denied the motion to strike.

■ ¶13 This court reviews trial court rulings on motions to strike for abuse of discretion. *Tortes v. King County*, 119 Wn. App. 1, 12, 84 P.3d 252 (2003).

■ ¶14 RAP 10.4(h) prohibits a party from citing an unpublished opinion of the Court of Appeals as authority. The rule provides, "[a] party may not cite as an authority an unpublished opinion of the Court of Appeals." RAP 10.4(h). Because Holland America's attorney did not cite unpublished appellate court decisions as authority, the trial court did not abuse its discretion in denying Oltman's motion to strike the attorney declaration.[9]

*Forum Selection Clause*

¶15 Oltman contends the trial court erred in enforcing the forum selection provision in Holland America's contract on several grounds: (1) the trial court did not engage in a choice of laws analysis and apply Washington instead of federal law, (2) the forum selection clause is invalid, (3) the federal court does not have jurisdiction because of the "saving to suitors" clause, and (4) the forum selection clause does not bar Susan's loss of consortium claim.[10]

---

[9] The attorney declaration citing published and unpublished federal and state court cases also did not violate RPC 3.7.

[10] This court reviews a grant of summary judgment de novo. *Retired Pub. Employees Council of Wash. v. Charles*, 148 Wn.2d 602, 612, 62 P.3d 470 (2003). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). All facts and reasonable inferences must be taken in the light most favorable to the nonmoving party. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

## 1. *Choice of Laws*

¶16 Oltman contends Washington law governs the validity of Holland America's forum selection provision in the cruise ship contract. We disagree.

■ ■ ¶17 Generally, federal law governs cruise ship contracts and the enforceability of a forum selection clause. *The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427, 18 L. Ed. 397 (1867); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959) (holding legal rights and liabilities arising from injury aboard ship are "within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law"); *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 834 (9th Cir. 2002) ("A cruise line passage contract is a maritime contract governed by general federal maritime law.").

¶18 Oltman relies exclusively on *Nunez v. American Seafoods*, 52 P.3d 720 (Alaska 2002), to argue that Washington, not federal, law governs. *Nunez* is distinguishable. In *Nunez*, an employee filed suit against his employer in Alaska state court under the Jones Act, 46 U.S.C. App. § 688 and 28 U.S.C. § 1333. *Nunez*, 52 P.3d at 721. Because the purpose of the Jones Act is to protect an employee's litigation rights, the court held that requiring the employee to file suit in federal court conflicted with the purpose of the Jones Act and was invalid. *Id.* at 722.

¶19 Here, unlike *Nunez*, Oltman is not an employee and is not covered by the Jones Act. And in *Carnival Cruise Lines*, the United States Supreme Court unequivocally held that because the passengers' injury occurred on board the cruise ship, it was a "case in admiralty, and federal law governs the enforceability of the forum-selection clause." 499 U.S. at 590. As in *Carnival Cruise Lines*, we conclude federal maritime law governs Oltman's personal injury claims.

### 2. *Holland America's Forum Selection Clause*

¶20 Oltman also claims the trial court erred in dismissing the lawsuit based on the forum selection provision in Holland America's cruise ship contract that designates the United States District Court for the Western District of Washington in Seattle as the proper forum for the suit.

¶21 Washington courts will enforce a forum selection clause unless doing so is unreasonable or unjust. *Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 618, 937 P.2d 1158 (1997). Because "the court does not accept the pleadings as true, the party challenging a forum selection provision bears a heavy burden to show it should not be enforced." *Wilcox v. Lexington Eye Inst.*, 130 Wn. App. 234, 239, 122 P.3d 729 (2005) (citing *Voicelink*, 86 Wn. App. at 618). " '[A]bsent some evidence submitted by the party opposing enforcement of the clause to establish fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties.' " *Voicelink*, 86 Wn. App. at 618 (quoting *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984)).

¶22 Here, as in *Wilcox*, 130 Wn. App. at 238-39, the question is whether Oltman met the burden of proving the forum selection clause should not be enforced under either a de novo or an abuse of discretion standard. *See also Bank of Am., NA v. Miller*, 108 Wn. App. 745, 747-48, 33 P.3d 91 (2001) (holding under either de novo or abuse of discretion standards of review, the trial court did not err in enforcing the forum selection clause).

¶23 In *Carnival Cruise Lines*, the Supreme Court held a nonnegotiated forum selection provision in a cruise ship passenger form ticket is enforceable if the provision is reasonable and fundamentally fair, is not intended to discourage legitimate claims, and is not the product of fraud or overreaching. 499 U.S. at 593, 595. The Court identified three rationales supporting its holding: (1)

cruise lines have a special interest in limiting the forum for litigation because they carry passengers from many locales and accidents can happen in many different places along the trip; (2) forum selection clauses dispel confusion over where suits can be brought, saving litigants time and money in litigating venue; and (3) passengers benefit from reduced fares, "reflecting the savings" the cruise lines make by limiting litigation forum. *Id.* at 593-94.

¶24 In applying *Carnival Cruise Lines'* "reasonable" and "fundamentally fair" analysis, the Ninth Circuit adopted a two-pronged "reasonable communicativeness" test. *Deiro v. Am. Airlines, Inc.*, 816 F.2d 1360, 1362 (9th Cir. 1987); *see also Wallis*, 306 F.3d at 835-36. The test considers (1) the physical characteristics of the ticket, including font size, conspicuousness and clarity of terms and conditions, and ease with which passengers can read the provisions, and (2) the circumstances surrounding the passenger's purchase and retention of the ticket, including familiarity with the ticket, time and incentive to study its provisions, and ability to become meaningfully informed of the ticket's terms and conditions. *Deiro*, 816 F.2d at 1364.

¶25 Relying on the Ninth Circuit's decision in *Wallis*, Oltman contends Holland America's forum selection clause fails both prongs of the reasonable communicativeness test. Oltman argues the warnings were hidden in a maze of fine print in a 30-page contract and were not provided to Oltman in time for meaningful review.

¶26 In *Wallis*, the court addressed the validity of a liability limitation provision in the Princess Cruise Lines contract. In that case, a passenger fell overboard and died. 306 F.3d at 830. His spouse filed suit against Princess Cruise Lines in federal district court. *Id.* at 831-32. The liability limitation provision appeared on pages six and seven of the Princess Cruise Lines' Contract, in 1/16th inch font, in the sixth and seventh sentences of a paragraph entitled "LIMITATIONS ON CARRIER'S LIABILITY." *Id.* at 830-31. The provision directed passengers to the Athens

Convention, " 'Relating to the Carriage of Passengers and Their Luggage by Sea' of 1976," or, in the alternative, to "the laws of the United States (including Title 46 U.S. Code Sections 181-186, 188)." *Id.* at 831. The contract also contained a forum selection clause requiring all passengers to file suit in Los Angeles, California. *Id.*

¶27 After deciding federal maritime law governed, the court applied the reasonable communicativeness test. *Id.* at 834, 836-37. The court held the liability limitation provision met the first prong—the physical characteristics of the ticket—but did not meet the second prong—the ability to become meaningfully informed about the terms and conditions of the contract. The court concluded the provision did not explicitly set forth the liability limitations but instead referenced confusing and inaccessible legal documents. *Id.* at 836-37. The court also concluded that the time and effort required to find the liability limitation provision was a disincentive to " 'study[ing] the provisions of the ticket' " and impeded the passenger's ability to become meaningfully informed of the terms and conditions. *Id.* at 837. Because the provision failed the second prong, the court held the liability limitation provision was not valid or enforceable.[11]

¶28 Applying the *Wallis* analysis, we conclude Holland America's forum selection clause satisfies both prongs of the reasonable communicativeness test.[12] First, as with the liability limitation provision in *Wallis*, the physical characteristics of Holland America's contract are conspicuous and clear. The first page of the cruise ship contract provides a conspicuous warning—"CONTRACT"—that notifies passengers of the contract's existence.[13] A bold, capitalized, and prominent heading runs along the bottom of this page:

---

[11] The court did not address the validity of the forum selection clause.

[12] Holland America produced a model contract in discovery, and not Oltman's contract. The model contract differs from the one Oltman received only in pagination. The critical language and warning headings of the example contract presented in discovery matched the one issued to Oltman exactly.

[13] The record below does not indicate the size of type.

"ISSUED SUBJECT TO THE TERMS AND CONDITIONS ON THIS PAGE AND THE FOLLOWING PAGES. READ TERMS AND CONDITIONS CAREFULLY." The next page is labeled "IMPORTANT NOTICE TO PASSENGERS" and begins, "THIS DOCUMENT IS A LEGALLY BINDING CONTRACT." It directs the reader to specific clauses "WHICH CONTAIN IMPORTANT LIMITATIONS ON YOUR RIGHT TO ASSERT CLAIMS AGAINST US." Together, these warnings reasonably communicate to passengers the existence of a contract and the importance of reading its terms.

¶29 Further, as with the contract in *Wallis*, Holland America's contract reminds the passenger to read the terms and conditions at least five times. These reminders appear throughout the contract, including in the table of contents, where the notice "(PLEASE READ)" appears next to the word "CONTRACT," and in the "KNOW BEFORE YOU GO" booklet.[14] And, the contract repeatedly directs the passenger to the web site, which provides in identical form all the contract's terms and conditions, as well as the passenger warnings and reminders.

¶30 The warnings and reminders in Holland America's contract also clearly direct the passenger to the forum selection provision. The forum selection provision is the first substantive provision after the itinerary. It clearly states in legible, unambiguous, and conspicuous language:

ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT, THE CRUISE, THE CRUISETOUR, THE HAL LAND TRIP OR THE HAL AIR PACKAGE SHALL BE LITI-GATED, IF AT ALL, IN AND BEFORE THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE, OR, AS TO THOSE LAWSUITS AS TO WHICH THE FEDERAL COURTS OF THE UNITED

---

[14] On page 4 of this booklet appears a section titled "1. Check your documents." This section reminds passengers to "Please review all of your documents including the Cruise Contract, as they contain important information." And, on the face of this booklet is the invitation " 'Welcome,' " " 'We invite you to visit our web site at www.hollandamerica.com.' "

STATES LACK SUBJECT MATTER JURISDICTION, IN THE COURTS OF KING COUNTY, STATE OF WASHINGTON, U.S.A., TO THE EXCLUSION OF ALL OTHER COURTS.

Additionally, the contract's one-year time provision follows the conspicuous heading "IMPORTANT TERMS AND CONDITIONS OF CONTRACT—READ CAREFULLY BEFORE ACCEPTING." Because the contract's bold, capitalized, unambiguous, and conspicuous warnings notify passengers of important terms and conditions, and because these terms and conditions are legible, unambiguous, and conspicuous, we conclude the physical characteristics of the contract satisfy the first prong of the reasonable communicativeness test.

¶31 Second, unlike the liability limitation provision in *Wallis*, Holland America's cruise ship contract explicitly and unambiguously states where lawsuits must be filed and meaningfully informs passengers of the terms and conditions of the contract. Also unlike *Wallis*, the forum selection provision is not buried in the contract and does not direct passengers to confusing legal documents.

¶32 Relying on *Casavant v. Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 787-89, 829 N.E.2d 1171 (2005), *cert. denied*, 546 U.S. 1173 (2006), Oltman argues he did not have the opportunity to fairly review the terms and conditions of the contract. *Casavant* is distinguishable. In *Casavant*, the passengers bought tickets one year before departure but Norwegian Cruise Line waited until 13 days before departure to provide the contract's essential terms. *Id.* The court held the contract was unenforceable because the "manner and means of the delivery of the terms of the contract for passage did not fairly allow the Casavants 'the option of rejecting the contract with impunity,' and because, in the limited time frame allotted, the Casavants did not accept the ticket as a binding contract . . . ." *Id.* at 788-89 (quoting *Carnival Cruise Lines*, 499 U.S. at 595).

¶33 Here, Oltman did not book tickets for the Holland America Cruise until 13 days before departure. Unlike in

*Casavant,* Oltman's delay limited the time to review the travel documents and the contract before departure. In addition, there is no dispute Oltman could access the terms and conditions on Holland America's web site or ask the travel agent for a model contract.

¶34 Even if the terms of the cruise ship contract meet the two-pronged Ninth Circuit test, Oltman argues in the alternative that enforcing the forum selection provision is contrary to the Supreme Court's rationale in *Carnival Cruise Lines.* We disagree. There is no dispute Holland America has a special interest in limiting the forum; the forum selection provision explicitly states all litigation must be brought in the United States District Court for the Western District of Washington in Seattle, unless subject matter jurisdiction is lacking;[15] and the limitation allows passengers to benefit from reduced fares. Under *Carnival Cruise Lines'* reasoning and analysis, Holland America's forum selection clause is fair and reasonable.[16]

¶35 We conclude Oltman fails to meet the burden of showing under either a de novo or an abuse of discretion standard that Holland America's forum selection provision should not be enforced.

---

[15] Since tort actions arising on cruise ships generally fall under federal maritime law, the federal court will almost always have federal subject matter jurisdiction. *Kermarec,* 358 U.S. at 628. This means the exception will rarely occur, and passengers will most likely never need to file in the courts of King County. Though the clause states two forums, in effect, only one forum is presented.

[16] Oltman also contends the forum selection provision is unenforceable under Washington law as unconscionable and as an adhesion contract. Because federal law governs this case, we need not address Oltman's argument. Nonetheless, the provision is not unconscionable and is enforceable under Washington law. In *Adler v. Manor,* 153 Wn.2d 331, 103 P.3d 773 (2004), the court noted the Ninth Circuit has criticized one-year limitation provisions and concluded an employer's 180-day statute of limitations on arbitration agreements was substantively unconscionable. The court did not rule one-year provisions unconscionable and did not extend its holding beyond the context of labor arbitration agreements. *Id.* at 356. And, "the fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable." *Zuver v. Airtouch Commc'ns, Inc.,* 153 Wn.2d 293, 304, 103 P.3d 753 (2004); *see also Wilcox,* 130 Wn. App. at 242.

### 3. *"Saving to Suitors" Clause*

¶36 Oltman also claims the federal court does not have jurisdiction under the "saving to suitors" clause. The saving to suitors clause provides, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other *remedies* to which they are otherwise entitled." 28 U.S.C. § 1333(1) (emphasis added).[17]

¶37 Oltman relies on *Little v. RMC Pacific Materials, Inc.*, 2005 U.S. Dist. LEXIS 14338, at *6 (N.D. Cal.), to argue the saving to suitors clause guarantees cruise ship passengers the right to file suit in state court. *Little* does not support Oltman's argument and is inapposite. While the *Little* court stated that the saving to suitors clause allows plaintiffs to file suit in state court, the court did not address a valid forum selection clause in a cruise ship contract. *Id.* The issue in *Little* concerned removal of a state action based on maritime jurisdiction. *Id.* at *4. The *Little* court explained that if the defendant seeks to remove a case in admiralty that was originally filed in state court under the saving to suitors clause, the defendant must establish an alternative basis for federal jurisdiction. *Id.* at *4-6.

### 4. *Loss of Consortium*

¶38 Oltman cites no authority that Susan's loss of consortium claim is not subject to the forum selection clause governing the litigation rights of the injured

---

[17] "Under this statute, a plaintiff may file an in personam maritime claim in state court where Congress has authorized such suits, or where such suits were known at common law and Congress has not conferred exclusive jurisdiction on the federal courts." *Hoddevik v. Arctic Alaska Fisheries Corp.*, 94 Wn. App. 268, 273, 970 P.2d 828 (1999). Federal and state courts enjoy concurrent jurisdiction over in personam cases. *Willapa Trading Co. v. Muscanto, Inc.*, 45 Wn. App. 779, 783, 727 P.2d 687 (1986). State courts presiding over in personam admiralty cases under this statute must follow "substantive maritime law." *Hoddevik*, 94 Wn. App. at 273.

spouse.[18] We need not address arguments not supported by citation to authority. RAP 10.3(a)(5); *see also State v. Giffing*, 45 Wn. App. 369, 376, 725 P.2d 445 (1986) ("Contentions without support of authority need not be considered on appeal."). Nonetheless, the trial court did not err in dismissing Susan's consortium claim. Loss of consortium is a separate, not a derivative, claim. *Green v. A.P.C.*, 136 Wn.2d 87, 101, 960 P.2d 912 (1998). But, "an element of this cause of action is the 'tort committed against the "impaired" spouse.'" *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 853, 728 P.2d 617 (1986) (quoting *Lund v. Caple*, 100 Wn.2d 739, 744, 675 P.2d 226 (1984)). The cruise ship contract provides that it applies to "ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT, THE CRUISE. . . . " Susan Oltman's claim is not separate from the alleged injury her husband suffered while on the cruise. Her claim both arises under and in connection with the cruise. Therefore, the contract, including the valid forum selection clause, applies to her.

¶39 We affirm the trial court's decision granting Holland America's motion for summary judgment and dismissing Oltman's lawsuit.

APPELWICK, C.J., and BAKER, J., concur.

Review granted at 161 Wn.2d 1001 (2007).

---

[18] In the reply brief, Oltman cites *Green v. A.P.C.*, 136 Wn.2d 87, 101, 960 P.2d 912 (1998), as authority that loss of consortium is a separate, not a derivative, claim. But the issue here is whether a forum selection clause applies to a noninjured spouse who was not a party to the contract limiting litigation rights.