*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RESQSOFT, INC., ) | |
| ) | Supreme Court No. S-17548 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-18-10376 CI |
| v. ) | |
| ) | O P I N I O N |
| PROTECH SOLUTIONS, INC. and ) | |
| STATE OF ALASKA, DEPARTMENT ) | No. 7539 – June 18, 2021 |
| OF REVENUE, ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Eva R. Gardner and Jeffrey W. Robinson, Ashburn & Mason, P.C., Anchorage, for Appellant. Allison G. Strickland, Jermain, Dunnagan & Owens, Anchorage, for Appellee Protech Solutions, Inc. Rachel L. Witty, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee State of Alaska.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

WINFREE, Justice.

## I. INTRODUCTION

The superior court dismissed a subcontractor's claims against the contractor because a venue provision in the subcontract required that litigation be conducted in

another state. The superior court also dismissed the subcontractor's unjust enrichment claim against the project owner for failure to state a claim upon which relief can be granted. The subcontractor appeals the dismissals; seeing no error, we affirm the superior court's decisions.

## II.    FACTS AND PROCEEDINGS

The State of Alaska, Department of Revenue solicited proposals for a technology project. Protech Solutions, Inc. submitted a competitive bid, identifying ResQSoft, Inc. as a subcontractor and technology partner. The State awarded Protech the nearly $3 million project; the State and Protech executed a contract for work to begin July 15, 2017 and end by June 30, 2020.

Although ResQSoft began work immediately, Protech and ResQSoft did not execute their subcontract until early October 2017; the subcontract specified that ResQSoft was to perform technical work (other than testing and project management) and provide fixed-price products. The relationship between Protech and ResQSoft broke down, and in February 2018 Protech terminated the subcontract and replaced ResQSoft with a different subcontractor.

In November 2018 ResQSoft filed a lawsuit against Protech and the State. ResQSoft alleged that Protech had violated the Alaska Uniform Trade Secrets Act[1] and the Alaska Unfair Trade Practices and Consumer Protection Act[2] (UTPA) by misappropriating ResQSoft's proprietary information and trade secrets as an unfair trade practice. Without alleging a breach of contract claim, ResQSoft sought injunctive relief and damages, including compensation for work performed and products delivered. ResQSoft alleged that the State was unfairly enriched because ResQSoft's work and

---

[1]    AS 45.50.910-.945.

[2]    AS 45.50.471-.561.

trade secrets had been wrongfully used in the project without payment, and it sought an equitable award of damages against the State.

Protech moved to dismiss ResQSoft's statutory claims for improper venue based on the subcontract's forum selection clause mandating suit in Delaware federal court.[3] The State moved to dismiss the unjust enrichment claim for failure to state a claim upon which relief may be granted.[4]

The superior court granted Protech's dismissal motion "because the forum selection clause encompasses the subject matter of this dispute." The court also granted the State's dismissal motion, determining that "ResQSoft fail[ed] to state a claim for unjust enrichment because as a matter of law, the State did not receive a windfall and contractual obligations and remedies between ResQSoft and Protech remain available such that the [c]ourt should not impute a quasi-contract between ResQSoft and the State."

After final judgments were entered and distributed, ResQSoft appealed, arguing that the superior court erred as a matter of law by granting Protech's dismissal motion for improper venue and by granting the State's dismissal motion for failure to state a claim for unjust enrichment.

## III.   STANDARD OF REVIEW

We review de novo a superior court's grant of an Alaska Civil Rule 12(b)(3) motion to dismiss for improper venue, exercising our independent

---

[3]   *See* Alaska R. Civ. P. 12(b)(3) (providing that defendant may file motion to dismiss lawsuit for improper venue).

[4]   *See* Alaska R. Civ. P. 12(b)(6) (providing that defendant may file motion to dismiss claims for failure to state claim upon which relief can be granted).

judgment.[5] Contract interpretation, including interpretation of forum selection clauses, is a question of law reviewed de novo with our independent judgment.[6] " 'Whether [a] forum-selection clause is enforceable is a question of law' to which we apply our independent judgment."[7] We review de novo a superior court's grant of a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted."[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Dismissing ResQSoft's Claims Against Protech.

#### 1. Preliminary issue

"To withstand a [dismissal] motion based on improper venue, the plaintiff must present a prima facie case that . . . venue is proper. The trial court may consider evidence outside the pleadings but should take . . . uncontradicted allegations as true and construe reasonable inferences and factual conflicts in favor of the plaintiff."[9] An evidentiary hearing is required only when a material fact necessary for resolving the

---

[5] *See Brooks Range Petroleum Corp. v. Shearer*, 425 P.3d 65, 70 (Alaska 2018) (holding proper venue "is a legal question we review de novo, applying our independent judgment to adopt the rule of law that is most persuasive in light of precedent, reason, and policy").

[6] *Alaska Fur Gallery, Inc. v. Tok Hwang*, 394 P.3d 511, 514 (Alaska 2017) ("We treat the interpretation of contract language as a question of law and interpret the language de novo." (quoting *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011))).

[7] *Nunez v. Am. Seafoods*, 52 P.3d 720, 721 (Alaska 2002) (alteration in original) (quoting *Bodzai v. Arctic Fjord, Inc.*, 990 P.2d 616, 618 (Alaska 1999)).

[8] *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000) (quoting Alaska R. Civ. P. 12(b)(6)).

[9] *Brooks Range*, 425 P.3d at 71.

venue motion is disputed, but "[w]hether to hold a hearing is committed to the trial court's discretion."[10]

ResQSoft argues that, when the superior court dismissed ResQSoft's claims against Protech because of improper venue, the court impermissibly considered Protech's "ten pages of new factual narrative, or 'rebuttal' to ResQSoft's [c]omplaint, unsupported by any affidavits." ResQSoft contends that the material "clearly influenced" the court's decision and that the court failed to expressly specify which of ResQSoft's allegations in the complaint it "considered to be 'uncontradicted,' and [the court] did not 'expressly exclude' the additional material as required by . . . precedents." Although we note that the superior court cited the complaint for the factual matters set out in its decision, we do not consider this argument because we review the superior court's decision de novo.[11] We consider only ResQSoft's complaint and the unquestioned contract and subcontract documents.

### 2.    Legal framework for forum selection clauses

We construe forum selection clauses broadly, releasing a party from a clause only when necessary to preserve justice or a compelling state interest.[12]  The party seeking to escape the clause bears the burden of showing that enforcing the clause would be unjust.[13]

---

[10]    *Id.*

[11]    *See id.* at 70.

[12]    *Nunez*, 52 P.3d at 723 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))).

[13]    *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P.2d 498, 503-04 (Alaska (continued...)

### 3. Why we affirm the superior court's decision that the forum selection clause applies to ResQSoft's claims

This case requires interpreting the subcontract's forum selection clause,[14] which specifies:

> In the event litigation is necessary to *enforce any provision of or resolve any dispute arising out of* this Agreement, the Parties agree that *any proceeding relating to or arising from* the Agreement will be heard and litigated exclusively in the federal district court of Delaware. (Emphases added.)

ResQSoft argues, as it did in the superior court, that the "forum selection clause is drafted narrowly and applies only to claims 'arising out of' the [s]ubcontract." ResQSoft specifically contends that the clause's opening phrase establishes a narrowly defined scope, covering only pure contract disputes, for triggering the forum selection clause. ResQSoft contends that the broader coverage of the second phrase simply identifies where contract disputes must be litigated. ResQSoft concludes that because it asserted no contract claims against Protech, the forum selection clause is not triggered. Protech responds, as it did in the superior court, that ResQSoft's claims, however described, arise out of the subcontract and cannot be resolved absent interpretation and application of the subcontract's terms.

---

[13]    (...continued)
1980) ("[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purpose be deprived of his day in court." (quoting *M/S Bremen*, 407 U.S. at 18)).

[14]    *See Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004) ("The objective of contract interpretation is to determine and enforce the reasonable expectations of the parties. . . . 'The parties' expectations are assessed by examining the language used in the contract, case law interpreting similar language, and relevant extrinsic evidence, including the subsequent conduct of the parties.' " (quoting *Municipality of Anchorage v. Gentile*, 922 P.2d 248, 256 (Alaska 1996))).

The superior court considered but rejected ResQSoft's arguments, referring to the forum selection clause as "broad" and stating that the "dispute arises out of the subcontract, and evaluation of the merits of the Trade Secrets and UTPA claims would require interpretation of the rights and duties set forth in the subcontract." We agree with the superior court.

The forum selection clause's "arising out of" language is sufficient to bring ResQSoft's claims within the clause's ambit regardless of the language difference in the forum selection clause's two phrases.[15] Non-contractual claims, even those arising from Alaska statutory law and equitable principles, may be subject to a contract's forum selection clause if the claims arise out of or relate to the contractual terms.[16] ResQSoft nonetheless relies on *Bodzai v. Arctic Fjord, Inc.*[17] to argue that the forum selection clause should not apply to its non-contract claims. In *Bodzai* we overturned the application of an employment contract's forum selection clause to the employee's personal injury claims, concluding that the personal injury claims based on negligence

---

[15]   *See, e.g.*, *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 357 (Alaska 2001) (discussing contractual indemnity clause and holding that "the phrase 'arising out of' . . . is very broad"); *Crowson v. Sealaska Corp.*, 705 P.2d 905, 910 (Alaska 1985) (discussing equipment lease contract "covering 'any suit arising out of the lease' " and holding suit "based on fraud in the inducement, 'arises' out of the lease, even if the complaint alleges only" tort claims).

[16]   *See Volkswagenwerk*, 611 P.2d at 504 (enforcing forum selection clause for non-contractual tort claims despite party "characteriz[ing] its action as . . . arising solely from Alaska statutory law and equitable principles rather than from contract"); *see also Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016) ("[If] a broad forum-selection clause is included in a contract and the parties raise non-contractual claims, the forum-selection clause can apply to the non-contractual claims, at least [if] 'resolution of the claims relates to interpretation of the contract.' " (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988))).

[17]   990 P.2d 616 (Alaska 1999).

did not arise out of the employment contract but rather were grounded in the federal Jones Act and common law maritime law.[18]  But the contract in *Bodzai* differed greatly from the subcontract in this case; as the superior court pointed out,  Bodzai's injury claims did not "arise under the terms" of his contract, unlike ResQSoft's statutory claims.

Neither the Trade Secrets Act nor the UTPA defines "proprietary information," but the subcontract does:

> [A]ll information and data relating to a party's technology, products, services or other business, including, without limitation: (i) product or service information, including designs and specifications, development plans, methodologies, technical approaches, and strategy; (ii) marketing information . . . ; (iii) computer software, including codes, flowcharts, algorithms, architectures, menu layouts, routines, report formats, data compilers and assemblers, templates, spreadsheets, functionality, concept, processes, internal structure, design, external elements, technology, and documentation; and (iv) financial information, including sales, pricing and revenue information.

The Trade Secrets Act defines "trade secret."[19]  The subcontract does not, but the statutory definition does not conflict with or alter the subcontract's provision about improper trade secret disclosures and misappropriation of proprietary information: "Both Parties agree that each will not disclose [proprietary information as previously

---

[18]    *Id.* at 618-20.

[19]    AS 45.50.940(3) defines "trade secret" as:

> [I]nformation that (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

defined in the subcontract] to third parties without the written consent of the transmitting Party, provided, however, that the recipient Party shall not be liable for any disclosure of such information to others under [certain conditions]."

The subcontract — to which the State is not a party — further specifies that the State retains ownership of any work product generated in the course of the project:

> Any delivered code or database structures that are converted [or] generated from the code provided by the State of Alaska using ResQSoft tools *will be the unencumbered property of the State of Alaska*. Related delivered documentation *will also be the unencumbered property of the State of Alaska*. In effect, the items that are delivered under this contract become the property of the State upon payment for those deliverables to ResQSoft as defined in the project schedule. (Emphases added.)

ResQSoft claims Protech shared ResQSoft's trade secrets, misappropriated its proprietary information, and engaged in unfair trade practices in violation of the Trade Secrets Act and the UTPA, but a court could not resolve those claims without looking to the subcontract's provisions about trade secrets, proprietary information, and ownership of and payment for proprietary information. Reviewing and interpreting the subcontract was necessary to deciding: (1) ownership interests in computer code or database structures; (2) what constitutes proprietary information; and (3) whether either entity failed to perform contractual duties regarding trade secrets, proprietary information, and contract payments. The subcontract governs the legitimacy of ResQSoft's claims and whether they fall under the Trade Secrets Act or the UTPA, thus triggering the forum selection clause.

### 4. Why we affirm the superior court's enforceability decision

We address four arguments against enforcing the contract's forum selection clause, and we outline the reasons each is unavailing.

### a.     Public policy argument

An otherwise applicable forum selection clause may be voided for public policy reasons:  "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."[20]  In the superior court ResQSoft argued it would be against public policy to enforce the subcontract's forum selection clause because the State and Protech's contract contained a forum selection clause designating an Alaska forum and because the State has a strong public policy favoring litigating Alaska law violations in Alaska courts.  But ResQSoft does not expressly make that public policy argument on appeal.

### b.     Unavailable remedy in chosen forum argument

A forum selection clause also may be unenforceable if the designated forum is so impracticable that no remedy is available:

> [I]t should be incumbent on the party seeking to escape [a] contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that [the party] will for all practical purpose be deprived of [the party's] day in court. Absent that, there is no basis for concluding that it would be unfair, unjust or unreasonable to hold that party to [the] bargain.[21]

In the superior court ResQSoft argued that the chosen Delaware forum was inconvenient and unconnected to the parties and the subject matter of the litigation.  But

---

[20]     *Volkswagenwerk*, 611 P.2d at 504 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

[21]     *Volkswagenwerk*, 611 P.2d at 503-04 (quoting *M/S Bremen*, 407 U.S. at 18) (emphasis omitted); *see also id.* at 504-05 (holding enforcement of forum selection clause would not be unreasonable or against any public policy under *Bremen* criteria and finding plaintiff's contention that it was unlikely to obtain relief in designated forum unpersuasive).

on appeal ResQSoft — a Virginia corporation — does not expressly make that argument for keeping its claims against Protech — an Arkansas corporation — in Alaska. Nor has ResQSoft asserted on appeal, and nothing suggests, that ResQSoft would be unable to obtain relief in Delaware federal court for valid claims.

### c.     Adhesion contract argument

In an adhesion contract a forum selection clause may be unenforceable if the party received no actual notice.[22] An adhesion contract exists if "the parties are 'of such disproportionate bargaining power that the [party in the weaker position] could not have negotiated for variations in the terms of the standard [contract].' "[23] An agreement negotiated at arm's length between equally situated parties is not an adhesion contract.[24]

ResQSoft argues on appeal that the subcontract is an adhesion contract because Protech delayed finalizing until ResQSoft had invested so much time and money in the project that it had no choice but to sign if it hoped to recoup its costs. But ResQSoft did not make this argument to the superior court in written opposition to

---

[22]     *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1291-92 (9th Cir. 2006) ("A forum selection clause within an adhesion contract will be enforced 'as long as the clause provided adequate notice to the [party] that he was agreeing to the jurisdiction cited in the contract.' " (quoting *Intershop Commc'ns, AG v. Superior Court*, 127 Cal.Rptr.2d 847, 848 (2002))); *Carnival Cruise Lines, Inc. v. Superior Court*, 286 Cal.Rptr. 323, 328 (1991) ("[T]he forum selection clause is unenforceable . . . if the court determines that [the] plaintiff did not have sufficient notice of [it]. . . . Absent such notice, the requisite mutual consent to that contractual term is lacking and no valid contract with respect to such clause thus exists.").

[23]     *Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 25 n.7 (Alaska 1997) (quoting *Graham v. Rockman*, 504 P.2d 1351, 1357 (Alaska 1972)).

[24]     *Id.*

Protech's dismissal motion; ResQSoft briefly alluded to the issue during oral argument but waived the argument by not sufficiently raising it.[25]

ResQSoft points to no factual allegations in its complaint suggesting that the subcontract terms were not the terms agreed to during negotiations, that it was at a disadvantage during contract negotiations, or that it lacked notice of the forum selection clause designating Delaware as the forum (mentioned three times in the subcontract). And ResQSoft undercuts its adhesion argument by explaining how critical it was for Protech to have a technology partner like ResQSoft to win the State's bid for the project.

These were sophisticated parties. Detailed, non-standardized subcontract language set out critical terms of the parties' business relationship, including provisions protecting ResQSoft's trade secrets and proprietary information. And the complaint did not contain any specific allegations that ResQSoft was forced to sign the subcontract or that it had no bargaining power regarding the forum selection clause. We thus are not persuaded by ResQSoft's newly minted argument that it was the victim of an adhesion contract.

### d. Fraud argument

There also is a "reasonableness" standard when determining whether a forum selection clause is enforceable.[26] Forum selection clauses are enforceable "absent a clear showing 'that enforcement would be unreasonable and unjust, or that the clause

---

[25] *Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) ("Generally, questions of whatever nature, not raised and properly preserved for review in the trial court, will not be noticed on appeal.").

[26] *Crowson v. Sealaska Corp.*, 705 P.2d 905, 911 (Alaska 1985) ("In *Volkswagenwerk, A.G. v. Klippan, GmbH* . . . this court rejected the common law rule that forum selection clauses are per se invalid and adopted in its place the reasonableness approach set out in *M/S Bremen v. Zapata Off-Shore Co.* . . . .").

was invalid for such reasons as fraud or overreaching.' "[27] As to fraud, a forum selection clause generally is enforceable unless the clause itself is a product of the fraud.[28] We have rejected the argument that "any time a dispute arising out of a transaction is based upon an allegation of fraud, the clause is unenforceable. Rather, the clause is enforceable unless 'the *inclusion of that clause in the contract* was the product of fraud or coercion.' "[29]

ResQSoft's complaint does not expressly allege fraud by Protech. But ResQSoft argued in its written opposition to Protech's dismissal motion that "Protech's [f]raudulent [c]onduct" rendered the forum selection clause unenforceable. At oral argument to the superior court, ResQSoft was not specific about how its fraud assertions supported invalidating the forum selection clause and conceded there was no need for an evidentiary hearing to resolve disputed facts:

> Court: [S]o with regards to the forum-selection clause argument that Protech is making, do you think that there are questions of fact?
>
> [ResQSoft Counsel]: I think, yes. Number one, I think it's legally inapplicable, but there is an element of our argument that addresses whether there was . . . fraudulent inducement and whether there were errors or problems[,] . . . fraud in the formation of that contract, which would necessarily involve taking the testimony of the people who formed that contract.
>
> Court: You're making a claim that there was fraudulent inducement of the contract?

---

[27]  *Id.* (quoting *M/S Bremen,* 407 U.S. at 15).

[28]  *Id.* at 910.

[29]  *Id.* at 911 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) (emphasis in original)).

[ResQSoft Counsel]:  I can address that section when I get to Protech.

Court:  Okay.

. . . .

Court:  Where in the complaint does it talk about fraudulent inducement of the contract?

[ResQSoft Counsel]:  The complaint doesn't specifically address the fraudulent inducement of the forum-selection clause.

Court:  . . . So you're focused on fraud that occurred after the parties entered into the [sub]contract?

[ResQSoft Counsel]: Right.

. . . .

Court:  What do you think are the factual matters in dispute that would warrant an evidentiary hearing at this point in time on the applicability of the forum-selection clause?

. . . .

[ResQSoft Counsel]: I don't know — Your Honor, I'll concede I don't know if there is a huge need. . . . I do think that it's mostly a legal determination that the court . . . can make based on the evidence before it.

The superior court later rejected ResQSoft's argument that Protech's alleged fraud invalidated the forum selection clause:

> ResQSoft also asserts that Protech's alleged fraudulent conduct renders the forum selection clause unenforceable. ResQSoft does not assert in the Complaint that the inclusion of the forum selection clause was the product of fraud or otherwise raise a fraudulent inducement claim, but suggested at oral argument that Protech had a scheme all along to cut ResQSoft out of the contracted-for benefits of the transaction. . . . [B]ecause ResQSoft does not assert that the

-14- 7539

forum selection clause was the product of fraud, the clause is enforceable.

ResQSoft contends in its opening appeal brief that its complaint "contained adequate allegations to support an inference of fraud that warranted further exploration," specifically fraud in the inducement,[30] and it argues that the superior court erred by not allowing ResQSoft the opportunity either to amend its complaint or to conduct limited discovery to determine whether Protech intended to defraud ResQSoft or the State. But ResQSoft's brief describes fraudulent inducement to sign the subcontract, not fraudulent inducement to include the forum selection clause in the subcontract. Only in ResQSoft's reply brief does it argue that *Crowson v. Sealaska Corp.*[31] supports a conclusion that the forum selection clause can be invalidated because the subcontract was fraudulently induced.

In *Crowson* we declined to enforce a forum selection clause because the entire contract was a product of fraud and bribery.[32] In that case Crowson paid Sealaska's representative over $1.4 million in bribes to obtain the agreement.[33] In essence "only one interest was represented at the bargaining table," and we held that "everything in the contracts that works to Crowson's advantage was presumably done

---

[30] To prove fraudulent inducement a party "must show that[:] (1) there was a misrepresentation; (2) the misrepresentation was fraudulent; (3) the misrepresentation induced [the party] to enter into the contract; and (4) [the party's] reliance on the misrepresentation was justified." *Indus. Commercial Elec., Inc. v. McLees*, 101 P.3d 593, 599 (Alaska 2004); *see also* 17A C.J.S. *Contracts* § 218 (2021) ("[A] claim of fraud in the inducement . . . arises when a party is induced . . . . to assent to something he or she otherwise would not have.").

[31] 705 P.2d at 905.

[32] *Id.*

[33] *Id.* at 907.

in return for the bribe payments."[34] ResQSoft relies on *Crowson* to advocate the unenforceability of the subcontract's forum selection clause, but ResQSoft neither alleged nor otherwise provided evidence of the kind of fraudulent conduct evident in *Crowson*.[35]

> **B. The Superior Court Did Not Err By Dismissing ResQSoft's Unjust Enrichment Claim Against The State.**

> **1. Legal framework for dismissal motions**

Rule 12(b)(6) motions to dismiss are viewed with disfavor.[36] "[A] complaint should not be dismissed for failure to state a claim *unless it appears beyond doubt* that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."[37] Like the superior court, we are required to "accept[] as true all factual allegations" in a complaint.[38] But if the complaint refers to documents without attaching them, the court may consider them if their authenticity is unquestioned.[39]

---

[34] *Id.* at 911.

[35] *Cf. Nash v. Dreyer*, No. S-14063, 2012 WL 1059667, at *2 (Alaska Mar. 28, 2012) (upholding forum selection clause in consulting agreement after appellant failed to present any evidence of fraud or misleading conduct in inducement or performance of contract); *see also* Alaska R. Civ. P. 9(b) (requiring pleading fraud allegations "with particularity," a heightened pleading standard).

[36] *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000).

[37] *Id.* at 254 (emphasis in original) (quoting *Martin v. Mears*, 602 P.2d 421, 429 (Alaska 1979)).

[38] *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012); *see also Caudle v. Mendel*, 994 P.2d 372, 374 (Alaska 1999); *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 6 (Alaska 2012).

[39] *Alleva v. Municipality of Anchorage*, 467 P.3d 1083, 1088-89 (Alaska 2020).

### 2.     Why we affirm the superior court's decision

Unjust enrichment is an equitable doctrine applied only when no other legal remedy exists.[40]  "Unjust enrichment is a broad equitable concept . . . . most closely linked with the law of restitution and implied (quasi) contracts."[41]  "Quasi-contracts are not true contracts but are judicially created obligations to do justice."[42]  There are three essential elements to a quasi-contract:  "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable . . . to retain it without paying the value thereof."[43]  But "the most significant requirement for recovery in quasi-contract is that . . . the defendant must receive a true windfall or 'something for nothing.' "[44]  If "a defendant has given fair consideration or value to a third party in exchange for the benefits conferred by the plaintiff, there is no windfall and no recovery will lie."[45]

The State had a contract obligating it to pay Protech for the project, and Protech had a subcontract obligating it to pay ResQSoft for work on the project.  If Protech breached the subcontract, ResQSoft has a legal remedy in the form of a breach of contract claim, along with its statutory claims.  And ResQSoft's contribution to the

---

[40]     *See Knaebel v. Heiner*, 663 P.2d 551, 553 (Alaska 1983).

[41]     *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987).

[42]     *Id.*

[43]     *Id.*

[44]     *Id.*

[45]     *Id.*

project cannot be a windfall to the State because the State must pay Protech the contract price for the benefits received; the State thus cannot receive "something for nothing."[46]

To avoid this conclusion, ResQSoft argues that its extensive contacts with the State over the project's course, particularly given Protech's alleged dereliction of duties under its contract with the State and ResQSoft's alleged performance of those duties, equate to a separate quasi-contract with the State. Although ResQSoft argued to the superior court that it was "not demanding the State pay for Protech's breach or non-payment," ResQSoft also argued that the only reason its work product is not yet legally owned by the State is Protech's non-payment to ResQSoft under the subcontract. But ResQSoft contends on appeal that its putative quasi-contract entitles it to relief from the State regardless of any payment the State made to Protech under the terms of their contract.

ResQSoft's arguments have no merit. As the superior court noted, ResQSoft does not attempt to explain why legal remedies against Protech under the subcontract — or under the Trade Secrets Act and the UTPA — insufficiently protect ResQSoft's interests to make an equitable unjust enrichment claim against the State viable. Nor does ResQSoft attempt to explain why the State should be liable both to Protech (by contract) and ResQSoft (by quasi-contract) for ResQSoft's work and proprietary information on the project.

To avoid the subcontract's forum selection clause, ResQSoft emphasized that it is not bringing a contract action to enforce legal contractual remedies against Protech; rather, ResQSoft is seeking to enforce only its other legal statutory remedies. But as the superior court correctly observed: "There is no dispute that the work performed by ResQSoft, for which compensation is sought, is work performed as the

---

[46] *See id.*

subcontractor on the project governed by the contract and subcontract." All aspects of ResQSoft's equitable unjust enrichment claim against the State for work done and proprietary materials provided for the project can be asserted as legal claims against Protech, regardless of possible change orders or contract adjustments that ResQSoft now speculates might show Protech gave the State contract discounts for the unpaid work and proprietary materials ResQSoft provided for the project. Even if the unpleaded speculation were true, that would not adversely affect ResQSoft's statutory claims or its presently unasserted contract claims against Protech.

ResQSoft's claim for unjust enrichment fails; the superior court correctly granted the State's dismissal motion.

## V. CONCLUSION

We AFFIRM the superior court's dismissal of ResQSoft's claims against both Protech and the State.